MICHAEL DOMINE, Plaintiff-Appellant, *v.* FULTON IRON WORKS, Defendant-Appellee.—(BRIDGETON MACHINE COMPANY *et al.*, Defendants.)

First District (5th Division)    No. 78-759

Opinion filed August 31, 1979.

Dario A. Garibaldi, of Flossmoor, and Pfeffer, Becker, Gabric & Cerveny, Ltd., of Chicago (Robert Salzman and Joseph Cerveny, of counsel), for appellant.

Jacobs, Williams and Montgomery, Ltd., of Chicago (Peter J. Magnani, Barry L. Kroll, and David A. Novoselsky, of counsel), for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiff appeals from the entry of summary judgment in favor of defendant Fulton Iron Works (Fulton) on a complaint seeking recovery from Fulton on the basis of strict liability and negligence, contending that the trial court erred in granting Fulton's motion for summary judgment.

The following facts pertinent to the disposition of this appeal appear in the record.

Plaintiff filed a two-count complaint alleging that he was injured on July 3, 1973, while operating a punch press "designed, manufactured and sold" by defendants Ferracute Corporation (Ferracute), Bridgeton Machine Company (Bridgeton) and Fulton. Plaintiff also named various sellers and distributors of the punch press as defendants. Count I is based upon strict liability and alleges that the punch press was defective and unreasonably dangerous when it left the control of Ferracute, Bridgeton and Fulton. Count II is based upon the negligence of defendants and alleges failure to incorporate various safety devices, to give adequate warnings as to the dangers of the machine, to give proper instructions for assembly, operation and maintenance, and to safely ship the machine.

Fulton, in answer to the complaint, stated that it did not have sufficient knowledge upon which to form a belief as to the manufacturer

and distributor of the punch press. Fulton did, however, deny that the punch press was in a dangerous or defective condition when placed in the stream of commerce.

Subsequently, Fulton filed a motion for summary judgment, alleging that it did not manufacture, design or sell the punch press but that the punch press was manufactured by Ferracute "in or prior to 1947." Fulton further stated that on April 22, 1968, it "purchased a product line and certain other assets from" Ferracute and that on May 6, 1968, it purchased certain inventory from Bridgeton, "formerly known as Ferracute." In support of the motion for summary judgment, Fulton attached the affidavit of its president, H. E. Miller, the asset purchase agreement between Fulton and Ferracute, and the bill of sale for the inventory purchased from Bridgeton.

In his affidavit, Miller stated that the punch press was manufactured by Ferracute in Bridgeton, New Jersey, and shipped to the G.M.C. Truck and Coach Division of General Motors Corp. on March 21, 1947. Miller also stated that Fulton removed all the purchased assets to its plant in St. Louis, Missouri; that Fulton did not purchase any of Ferracute's real property; that Ferracute retained certain general machinery and that Ferracute continued to exist as a corporate entity under the name of Bridgeton after the transaction. To the best of Miller's knowledge Ferracute was not rendered insolvent or unable to pay its debts as a result of the transaction and remained able to respond to the claims of its creditors.

The agreement between Fulton and Ferracute is titled "Asset Purchase Agreement" and pertains to "the sale of certain assets." It provided that, prior to Fulton's payment for the assets, Ferracute would adopt a new corporate name which would not include the words Ferracute, Farquhar or Press. Ferracute and its principal shareholders, Mr. and Mrs. George E. Barr, agreed not to produce or sell presses in the continental United States for a period of four years from the date of the agreement. The assets to be transferred were listed in the agreement and included the following: tradenames and trademarks "Ferracute" and "Farquhar"; all patents relating to Ferracute or Farquhar presses; all engineering drawings and related details necessary to produce Ferracute or Farquhar presses; sales literature; file cabinets for records; jigs and fixtures for the production of Ferracute or Farquhar presses; patterns; one completed press; store inventory located at Ferracute's plant; and an agreement not to compete. Fulton agreed to remove the tangible assets from Ferracute's plant within 30 days after payment for said assets.

Plaintiff did not file any counteraffidavits in response to Fulton's motion for summary judgment. On June 21, 1977, the trial court granted

Fulton's motion for summary judgment. Plaintiff appeals from the entry of that order.

OPINION

On appeal plaintiff contends that the trial court erroneously granted Fulton's motion for summary judgment. Section 57 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 57) provides that a motion for summary judgment should be granted where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Applying this principle to the instant case, we believe summary judgment was properly granted.

### As to Count I

In count I plaintiff seeks to recover against Fulton on a theory of strict liability in tort. Although plaintiff concedes that the evidence establishes that Fulton played no role in the actual manufacture or distribution of the punch press, he argues that Fulton should be held liable as Ferracute's corporate successor. The general rule regarding the liability of a successor corporation is:

> " '* * * that where one company sells or otherwise transfers all its assets to another company, the latter is not liable for the debts and liabilities of the transferor. The purchasing or transferee company, that is to say, is not liable on the other company's obligations merely by reason of its succession to such company's property. To render it liable there must be an agreement express or implied, to assume the other company's debts and obligations.' " *Commercial National Bank v. Newston* (1976), 39 Ill. App. 3d 216, 218, 349 N.E.2d 138, 140.

The general rule is subject only to the following exceptions: (1) where the transaction amounts to a consolidation or merger of the purchaser and seller; (2) where the purchaser is a mere continuation of the seller; or (3) where the transaction is for the fraudulent purpose of escaping liability. *Hernandez v. Johnson Press Corp.* (1979), 70 Ill. App. 3d 664, 388 N.E.2d 778.

Plaintiff concedes that neither the general rule nor the exceptions thereto entitle him to recovery. However, plaintiff relies upon *Ray v. Alad Corp.* (1977), 19 Cal. 3d 22, 560 P.2d 3, 136 Cal. Rptr. 574, and urges this court to adopt a products liability exception to the general rule as set forth therein. In *Ray* the California Supreme Court held that:

> "[A] party which acquires a manufacturing business and continues the output of its line of products under the circumstances here presented *assumes strict tort liability for defects in units of the same products line previously manufactured and distributed by*

the entity from which the business was acquired." 19 Cal. 3d 22, 34, 560 P.2d 3, 11, 136 Cal. Rptr. 574, 582.

Initially, we note that even under *Ray*, which we have specifically refused to adopt (see *Hernandez v. Johnson Press Corp.* (1979), 70 Ill. App. 3d 664, 388 N.E.2d 778), plaintiff here is not entitled to recovery. In *Ray*, the defendant, Alad II, acquired the physical plant, manufacturing equipment, inventory, work in progress, finished goods, design records, factory personnel and consulting services of the general manager of Alad I, the manufacturer of the defective product. Alad I dissolved shortly after the transaction in accordance with the purchase agreement. In the present case, however, the record clearly shows that Fulton purchased only some of the corporate assets of Ferracute. Following consummation of the transaction, Ferracute continued to exist as a corporate entity under the name Bridgeton and was named as a defendant by plaintiff in the present action. It cannot be said under the facts of this case that Fulton is the corporate successor to Ferracute.

■■ More importantly, however, we do not believe that the holding of the California Supreme Court in *Ray* is in conformity with the law of strict liability in this State. Strict liability in tort was adopted by our supreme court in *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182. In *Suvada* the court held that a manufacturer is liable under a theory of strict liability if the plaintiffs "prove that their injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control." (32 Ill. 2d 612, 623, 210 N.E.2d 182, 188.) The cornerstone of strict liability rests upon the defendant's active participation in placing the allegedly defective product into commerce (*Keen v. Dominick's Finer Foods, Inc.* (1977), 49 Ill. App. 3d 480, 364 N.E.2d 502), and our supreme court has specifically refused to impose strict liability upon a defendant who is outside of the original producing and marketing chain. *Peterson v. Lou Bachrodt Chevrolet Co.* (1975), 61 Ill. 2d 17, 329 N.E.2d 785.

■■ The corporate successor to the manufacturer of an allegedly defective product, who takes succession after the product has left the manufacturer's control, is clearly outside of the original producing and marketing chain. Such a corporate successor cannot fairly be said to have participated in placing the product into the stream of commerce. Accordingly, we do not believe that the doctrine of strict liability as developed in this State is applicable to a successor corporation.

Moreover, we do not believe that the public policy of Illinois favors extension of the doctrine of strict liability to a successor corporation. In *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 82, 338 N.E.2d 857, 860, the court made it clear that:

"The major purpose of strict liability is to place the loss caused by

defective products on those who create the risk and reap the profit by placing a defective product in the stream of commerce * * *."

The other policy considerations underlying imposition of strict liability are (1) that the public interest in human life and health requires protection of law, and (2) that the manufacturer solicits and invites use of the product, thereby representing to the public that it is safe and suitable for use. (See *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182; *Johnson v. Marshall & Huschart Machinery Co.* (1978), 66 Ill. App. 3d 766, 384 N.E.2d 141.) The corporate successor to the manufacturer of a defective product cannot be said to have created the risk, and, except in a very remote way, does not reap the profit derived from sale of the product. Moreover, the successor corporation has neither invited use of the product nor represented to the public that the product is safe and suitable for use. Finally, we do not believe that the public interest in human life and health would be served by adoption of *Ray*. The corporate successor is not in a position to exert any pressure upon the manufacturer to enhance the safety of the product.

■■ For the foregoing reasons we reject plaintiff's request that we adopt the holding of *Ray v. Alad* by applying the doctrine of strict liability in tort to a successor corporation.

### As to Count II

■■ In count II plaintiff alleged that Fulton "carelessly and negligently" failed to give adequate warnings as to the dangers of the punch press. It is clear that a complaint for negligence must set out the existence of a duty owed by the defendant to the plaintiff, a breach of that duty and an injury proximately resulting from the breach. (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 301 N.E.2d 307.) Duty has been defined as an obligation imposed by law requiring a person to conform to a certain standard of conduct for the protection of another against an unreasonable risk. (*Laflin v. Estate of Mills* (1977), 53 Ill. App. 3d 29, 368 N.E.2d 522.) Here, plaintiff did not plead, nor do the facts establish, that Fulton was under a duty to warn anyone of an alleged defect in the punch press manufactured and placed into commerce by Ferracute. Accordingly, the trial court did not err in granting summary judgment against plaintiff on count II.

For the foregoing reasons the order of the circuit court granting summary judgment in favor of Fulton is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.