JOSE GONZALEZ, Plaintiff-Appellant, *v.* ROCK WOOL ENGINEERING AND EQUIPMENT COMPANY, INC., *et al.*, Defendants-Appellees.

First District (5th Division)   No. 82—1906

Opinion filed August 19, 1983.

Steinberg, Polacek & Goodman, of Chicago (William L. Barr, Jr., of counsel), for appellant.

Wildman, Harrold, Allen & Dixon, of Chicago (Lenard C. Swanson and Elise E. Singer, of counsel), for appellees.

JUSTICE LORENZ delivered the opinion of the court:

During the course of his employment with Forty-Eight Insulations in Aurora, Illinois, plaintiff was injured on April 21, 1975, operating a battline insulation processing and cutting machine manufactured by defendant Rock Wool Engineering and Equipment Company, Inc., an Indiana corporation. The injury resulted in the amputation of the fingers of his right hand. The machine, designed by Rock Wool's employees, Thomas Shovlin and E. R. Overman was built in 1953 and modified in 1958.

On March 3, 1966, Rock Wool executed an agreement by which it sold the bulk of its assets to defendant Bemis in exchange for cash and Bemis continued to manufacture battline machines similar to the one which plaintiff asserts was defective. Bemis also supplied Rock Wool's former customers with spare parts. Later, Rock Wool changed its corporate name to Overman and Shovlin and in late 1967, the corporation was dissolved under the applicable provisions of Indiana law. Thomas Shovlin, former director and vice-president of Rock Wool, accepted Bemis' offer to be its product manager. Another Rock Wool employee, Robert Stoudt, was employed as a foreman for Bemis.

In his original complaint filed February 22, 1977, plaintiff sought to attach the liability of Rock Wool for the injury caused by the allegedly defective machine to the defendant Bemis, as successor in interest to Rock Wool.

Plaintiff's fourth amended complaint, the subject of this appeal, was filed on January 11, 1982, and consisted of four counts. Count I was based on Bemis' alleged failure to give adequate warning as to the presence of certain conditions which allegedly rendered the product unreasonably dangerous. Count II alleged Bemis' negligence in

failing to warn of a dangerous and defective condition. Count III pleaded a cause of action in strict liability predicated upon an alleged *"de facto* merger" between Bemis and Rock Wool. The final strict liability count alleged that Bemis, as corporate successor to Rock Wool, carried on the "product line" of Rock Wool.

On March 8, 1982, Bemis moved to dismiss the fourth-amended complaint and attached the affidavit of Thomas Shovlin, the product manager of Bemis. The affidavit set forth, *inter alia,* that there was no interchange of stock or change in ownership in either corporation following the agreement; and that the battline equipment at Forty-Eight Insulations was not serviced by Bemis from 1966 up to and including the date of plaintiff's injury, April 21, 1975.

Following a hearing, the trial court dismissed plaintiff's complaint for failure to state a cause of action. Plaintiff appeals.

OPINION

The sole issue on review is whether the trial court erred in dismissing plaintiff's fourth amended complaint for failure to state a cause of action against Bemis.

An analysis of this issue requires us to address the arguments advanced by plaintiff in support of his claim.

Plaintiff argues that: (1) Bemis, as successor in interest, undertook the duty of its predecessor to warn of dangerous defects of which it was aware; (2) that the transaction in question constituted a *de facto* merger; and (3) that strict liability attaches to a successor corporation which acquires services and maintains its predecessor's product line.

■ We first address plaintiff's contention that Bemis, as a successor corporation, owed an independent duty to warn under a strict liability theory.

In Illinois, three elements are required for strict liability in tort; (1) plaintiff must have suffered an injury to an interest protected by law; (2) defendant must have had a duty to prevent the injury from occurring, and (3) defendant must have breached that duty and the injury must have resulted from that breach. (See *Braband v. Beech Aircraft Corp.* (1977), 51 Ill. App. 3d 296, 367 N.E.2d 118, *aff'd* (1978), 72 Ill. 2d 548, 382 N.E.2d 252, *cert. denied* (1979), 442 U.S. 928, 61 L. Ed. 2d 296, 99 S. Ct. 2857.) It is clear, however, that one who has done nothing to create a risk of injury cannot usually be burdened with the duty of preventing that injury.

Plaintiff directs our attention to *dictum* in *Nguyen v. Johnson Machine & Press Corp.* (1982), 104 Ill. App. 3d 1141, 1147, 433

N.E.2d 1104, 1109, which suggests that a successor corporation may have a duty to warn of defects before an injury occurs if it learns that one of its predecessors' products is defective.

There, the *Nguyen* court stated that "[i]n strict liability cases, our courts have found an absolute duty of prevention in those parties who can be found to have created the risk of injury by being involved in placing the defective product that has caused injury into the stream of commerce. [Citation.] However, it is impossible to conceive of such a duty on the party of the successor corporation unless circumstances following the corporate transfer give rise to the duty. For example, if the successor corporation learns that one of its predecessor's products is defective and knows the location of that product, it may, though we do not so hold here, have a duty to warn of its defects before an injury occurs." *Nguyen v. Johnson Machine & Press Corp.* (1982), 104 Ill. App. 3d 1141, 1147, 433 N.E.2d 1104, 1109.

In order to determine the presence of a nexus or relationship effective to create a duty to warn, the following factors may be considered: (1) succession to a predecessor's service contracts; (2) coverage of the particular machine under a service contract; (3) service of that machine by the purchaser corporation; and (4) a purchaser corporation's knowledge of defects and of the location or owner of that machine. (*Travis v. Harris Corp.* (7th Cir. 1977), 565 F.2d 443, 449.) Thus, the critical element required for the imposition of this duty is a continuing relationship between the successor and the predecessor's customers benefiting the successor.

In the present case, a review of the record does not indicate that such a continuing relationship existed. The purchase agreement did not include either a succession to the service contracts of Rock Wool, or coverage of the particular battline machine in question under a service contract. Thomas Shovlin's affidavit states that defendant Bemis did not service, maintain, or repair the battline equipment located at Forty-Eight Insulations from March 31, 1966, up to and including April 21, 1975; and while Bemis did send a letter to Rock Wool's customers offering to continue to maintain and service the products, there is no indication of any acceptance by plaintiff's employers.

Consequently, in the absence of any evidence indicating a continuing relationship between Bemis and Forty-Eight Insulations, we find that there is no basis for the imposition of liability upon Bemis for breach of a duty to warn.

■ Plaintiff next argues that the acquisition of Rock Wool by Bemis constituted a *de facto* merger.

In Illinois, a corporation which purchases the assets of another

corporation is not generally liable for the debts and liabilities of the transferor in the absence of an agreement providing otherwise. (*Barron v. Kane & Roach, Inc.* (1979), 79 Ill. App. 3d 44, 398 N.E.2d 244.) Courts have recognized several exceptions to the general rule where (1) the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (2) the purchaser is merely a continuation of the seller; and (3) the transaction is for the fraudulent purpose of escaping liability for the seller's obligations. *Hernandez v. Johnson Press Corp.* (1979), 70 Ill. App. 3d 664, 388 N.E.2d 778; *Domine v. Fulton Iron Works* (1979), 76 Ill. App. 3d 253, 395 N.E.2d 19.

Relying on exception (1), plaintiff asserts that the acquisition constituted a *"de facto"* merger, since the transaction in question is devoid of the ordinary signs of a merger. The criteria for establishing a *de facto* merger as set forth in the *Hernandez* case are: (1) there should be a continuity of business operations between the transferor corporation and the transferee corporation, including continuity of management, employees, location and assets; (2) there should be a continuity of shareholders, whereby shareholders of the transferor corporation exchange their ownership of the transferor corporation for shares of the transferee corporation; (3) the transferor corporation should cease operations and dissolve within a short time; and (4) the transferee corporation then assumes those liabilities of the transferor corporation which are necessary for the continuation of normal business operations. *Hernandez v. Johnson Press Corp.* (1979), 70 Ill. App. 3d 664, 667, 388 N.E.2d 778.

In the instant case, a review of the record does not indicate that a *de facto* merger occurred in 1966. There was no continuity in the management but for two management employees, Thomas Shovlin and Robert Stoudt, no other Rock Wool employees were hired by Bemis, and plant operations were moved to Minneapolis seven months after the purchase. Secondly, it is undisputed that no Bemis stock was exchanged for Rock Wool assets and the sole consideration of this sale was cash. Third, Rock Wool changed its name to Overman & Shovlin pursuant to the 1966 acquisition agreement, and dissolved over a year later in April 1967, under Indiana law. Hence, there was neither a cessation of operations nor a corporate dissolution within a short period of time.

Finally, it is to be expected that the purchasing corporation will continue the operations of the predecessor, but this does not by itself render the purchaser liable for the obligations of the predecessor.

As the court in *Bergman & Lefkow Insurance Agency v. Flash Cab Co.* (1969), 110 Ill. App. 2d 415, 431, 249 N.E.2d 729, succinctly

observed: "[L]iability founded on a tort, like any other liability, may [only] be impliedly assumed by a new corporation which represents only a 'new coat' for its old owners." With the foregoing legal principles in mind, we therefore find that Bemis was not such a continuation of Rock Wool as to render it liable for the latter's torts.

■ Plaintiff urges also that by virtue of acquiring and maintaining the product line of Rock Wool, its predecessor, defendant Bemis has in fact participated in the profits reaped from placing the subject defective battline machine in the stream of commerce and should therefore not be freed from the resulting responsibilities.

Although plaintiff cites *Ray v. Alad Corp.* (1977), 19 Cal. 3d 22, 560 P.2d 3, 136 Cal. Rptr. 574, as authority for its position, we have specifically refused to adopt the "product line" approach to successor liability as set forth in *Ray* in several recent decisions (*Freeman v. White Way Sign & Maintenance Co.* (1980), 82 Ill. App. 3d 884, 403 N.E.2d 495; *Barron v. Kane & Roach, Inc.* (1979), 79 Ill. App. 3d 44, 398 N.E.2d 244; *Hernandez v. Johnson Press Corp.* (1979), 70 Ill. App. 3d 664, 388 N.E.2d 778; *Domine v. Fulton Iron Works* (1979), 76 Ill. App. 3d 253, 395 N.E.2d 19), and we decline the opportunity to do so here.

As enunciated by the court in *Domine v. Fulton Iron Works* (1979), 76 Ill. App. 3d 253, 257, 395 N.E.2d 19, "The corporate successor to the manufacturer of an allegedly defective product, who takes succession after the product has left the manufacturer's control, is clearly outside of the original producing and marketing chain. Such a corporate successor cannot fairly be said to have participated in placing the product into the stream of commerce. Accordingly, we do not believe that the doctrine of strict liability as developed in [Illinois] is applicable to a successor corporation." We therefore find that plaintiff's policy argument lacks merit.

Accordingly, we hold that the trial court did not err in dismissing plaintiff's fourth amended complaint for failure to state a cause of action.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SULLIVAN and MEJDA, JJ., concur.