Creasy CONN, Plaintiff–Appellant,

and

Continental Insurance Company, Intervening Plaintiff–Appellant,

v.

FALES DIVISION OF MATHEWSON CORPORATION, Defendant–Appellee.

Nos. 86–5607, 86–5710.

United States Court of Appeals, Sixth Circuit.

Argued May 5, 1987.

Decided Dec. 17, 1987.

William R. Kenealy (argued) Kenneth L. Sales, Segal, Isenberg, Sales, Stewart and Cutler, Louisville, Ky., for plaintiff-appellant.

Harry K. Herren, Woodward, Hobson and Fulton, Joseph L. Lenihan (argued), Mark R. Feather, Brian C. Harrison, Louisville, Ky., for defendant-appellee.

Brian W. Hodge, Continental Ins., William P. Hurley, Jr., Louisville, Ky., for intervening plaintiff-appellant.

Before GUY and BOGGS, Circuit Judges, and WOODS, District Judge.*

BOGGS, Circuit Judge.

Creasy Conn was injured in the course of her employment. She sued the corporation which was a successor to the manufacturer whose equipment caused her injury. We find no indication that Kentucky law would permit her to prevail on her cause of action, and we thus affirm the district court's grant of summary judgment against her.

## I

On July 18, 1983, Creasy Conn was injured in the course of her employment with Continental Air Filter, Inc., in Louisville, Kentucky, while attempting to operate an industrial machine known as a Fales machine. On July 17, 1984, Conn filed a personal injury action against the Fales Division of Mathewson Corporation (Mathewson).

On August 9, the court granted Mathewson's motion for summary judgment on the ground that the machine was made more than seven years prior to the accident by a different company, and, as a successor corporation to the machine's manufacturer, Mathewson was not liable under Kentucky's law of corporate successor liability.

* The Honorable George E. Woods, United States District Judge for the Eastern District of Michigan, sitting by designation.

Conn now appeals from the court's grant of summary judgment.

## II

Kentucky law recognizes only four exceptions to the general rule that "a purchaser, in the absence of a contract obligation, cannot be held for the debts and liabilities of the selling corporation." *American Railway Express Co. v. Commonwealth*, 190 Ky. 636, 228 S.W. 433, 441 (1920). Those exceptions are (1) where the purchaser expressly or impliedly agrees to assume such debts or other liabilities; (2) where the transaction amounts to a consolidation or merger of the seller and purchaser; (3) where the purchasing corporation is merely a continuation of the selling corporation; or (4) where the transaction is entered into fraudulently in order to escape liability for such debts. 228 S.W. at 437–41; 66 A.L.R.3d 824 and cases cited therein.

The present case fits none of these exceptions. Conn provides three alternative reasons why liability should attach to Mathewson. Conn's first reason is that Mathewson purchased a substantial portion of the assets of the L.F. Fales Corporation, including all the machinery necessary to produce the entire production line of sewing and slitting machines, customer lists, good will, and the "Fales" name and logo. Conn argues that this constitutes a continuation of the business and product line of L.F. Fales without any significant change in outward appearances. She contends that this case is on all fours with *Cyr v. B. Offen & Co.*, 501 F.2d 1145 (1st Cir.1974), in which a corporate successor was held liable for the harm done by its predecessor's machinery, although the sales agreement between the two disclaimed such liability, as did the sales agreement between Mathewson and L.F. Fales.

[I]t is true that the successor, by definition, was not the legal entity which launched the product on the stream of commerce or made an implied representa-

tion as to its safety. But in the most real sense it is profiting from ... exploiting all of the accumulated good will which the products have earned, both in its outward representations of continuity and in its internal adherence to the same line of equipment.

501 F.2d at 1154. Thus, *Cyr* is an expansion of the third exception listed above, the "mere continuity" exception.

However, the situation facing the *Cyr* court was significantly different from the case here. "New Hampshire's law [gave no] specific guidance" to the problem. *Id.* at 1150–51. In contrast, Kentucky law does provide specific guidance, albeit venerable guidance, in *American Railway Express Co.*

Further, the Offen company had been a proprietorship, which was run by an executor after the proprietor died, until a group of employees contracted to purchase the entire business. The purchase contract required the purchasers to operate "in accordance with the same business practices and policies," and old service obligations were assumed by the purchaser. *Cyr*, 501 F.2d at 1151. The same employees continued without pause to produce the same products, in the same plant, with the same supervision. *Id.* at 1154. In contrast, Mathewson purchased L.F. Fales from the First National Bank of Boston, which had the right of sale in satisfaction of a security instrument. Mathewson did not purchase real estate, cash on hand, accounts receivable, completed machines, or other assets connected with other product lines. Only one employee moved from L.F. Fales to Mathewson. We note that the First Circuit distinguished *Cyr* on its facts in a later successor liability case, *Dayton v. Peck, Stow and Wilcox Co.*, 739 F.2d 690 (1st Cir.1984), characterizing *Cyr* as the exception rather than the rule, due to its "compelling and rather unusual facts...." *Dayton*, 739 F.2d at 693. Conn presents no such facts.

Conn's second reason why liability should attach to Mathewson is that nearly all of the assets of the original manufacturer were transferred to Mathewson. In sup-

port of this argument, she cites *Ray v. Alad Corp.*, 19 Cal.3d 22, 560 P.2d 3, 136 Cal.Rptr. 574 (1977), in which the California Supreme Court found liability against a successor corporation despite an absence of any of the four exceptions, because all assets of the seller were transferred to the successor corporation. However, those assets included

the physical plant, the manufacturing equipment, and the inventories of raw material, work in process, ... finished goods, ... the know-how available through the records of manufacturing designs, the continued employment of the factory personnel, and the consulting services of [the predecessor corporation's] general manager.

560 P.2d at 10, 136 Cal.Rptr. at 581. In the present case, Mathewson did not acquire raw material, work in process or, with one exception, any employees.

Conn also cites to, but does not discuss, *Ramirez v. Amsted Industries, Inc.*, 86 N.J. 332, 431 A.2d 811 (1981), which substantially adopted the *Ray* analysis. The court in *Ramirez* acted in accordance with what it characterized as "New Jersey's position 'in the vanguard' advancing the principle of enterprise liability and the philosophy of spreading the risk to society for the cost of injuries from defective products...." 431 A.2d at 813. Conn does not suggest, nor are we aware of any authority from the Kentucky Supreme Court, that Kentucky occupies a similar vanguard position.

Conn's third reason why liability should attach to Mathewson is that Kentucky's statutory adoption of strict product liability indicates that it would necessarily adopt the "complete line of production" argument. As a court sitting in diversity and applying Kentucky law, we must determine the likely resolution of such a claim in Kentucky courts, in the absence of some indication from the Kentucky legislature or courts. Conn urges that the adoption of strict liability in Kentucky is a sign that Kentucky state courts would go further and adopt the "complete line of production" rule, as set forth in *Ray v. Alad Corp.*, 19

Cal.3d 22, 560 P.2d 3, 136 Cal.Rptr. 574 (1977) and *Ramirez v. Amsted Industries, Inc.*, 86 N.J. 332, 431 A.2d 811 (1981).

We do not find this argument persuasive. The weakness of the argument is demonstrated by the fact that a number of states have statutorily adopted product liability, but have rejected product line liability. *See Gonzalez v. Rock Wool Engineering and Equipment Co.*, 117 Ill.App.3d 435, 72 Ill. Dec. 917, 453 N.E.2d 792 (1983); *Southwest Distributing Co. v. Olympia Brewing Co.*, 90 N.M. 502, 565 P.2d 1019 (1977); *H.M. Chase Corp. v. Idaho Potato Processors*, 96 Idaho 398, 529 P.2d 1270 (1974). The Eighth Circuit, when presented with exactly this argument, held against the plaintiff, stating that "Missouri's commitment to strict liability does not provide a sufficient reason to depart from the traditional rule of [successor corporation] nonliability...." *Tucker v. Paxson Machine Co.*, 645 F.2d 620, 625 (8th Cir.1981). *See also Leannais v. Cincinnati, Inc.*, 565 F.2d 437 (7th Cir. 1977) (declining to recognize product line liability theory under Wisconsin law). Additionally, we find it particularly unlikely that the Kentucky Supreme Court would adopt as novel a development as "product line liability" in view of the recent characterization of its jurisprudence in a dissent in *Nolph v. Scott*, 725 S.W.2d 860 (Ky. 1987):

> This is yet another unfortunate decision in a line of recent cases from our Court using an unnecessarily harsh and overly technical approach to the detriment of the person who has been wronged. This line of cases includes, among others, *Reda Pump Co. v. Finck*, [Ky.,] 713 S.W.2d 818 (1986), *Federal Kemper Ins. Co. v. Hornback*, Ky., 711 S.W.2d 844 (1986), *Kirchner v. Riherd*, Ky., 702 S.W.2d 33 (1985), and *Prudential Life Ins. Co. v. Moody*, Ky., 696 S.W.2d 503 (1985). This case, like these others named, harkens back to 19th Century "mechanical jurisprudence," condemned by Roscoe Pound. See Pound, *Mechanical Jurisprudence*, 8 Colum.L. Rev. 605 (1908).

725 S.W.2d at 865 (Leibson, J., dissenting).

Conn neither demonstrates that the present case is so similar to earlier product line liability cases that we should adopt the reasoning of those cases, nor offers any persuasive indication that Kentucky is likely to adopt "product line liability." The judgment of the district court is therefore AFFIRMED.