WILLIAM MYERS, Plaintiff-Appellant, v. PUTZMEISTER, INC., d/b/a Thomsen Equipment, *et al.*, Defendants-Appellees (Original Concrete Pumping Service, Inc., Defendant).

First District (1st Division)   No. 1—91—1986

Opinion filed July 6, 1992.

Alan C. Mendelson, of Chicago, for appellant.

Katz, Randall & Weinberg, of Chicago (Lawrence M. Karlin, of counsel), for appellees.

JUSTICE MANNING delivered the opinion of the court:
Plaintiff, William Myers, brought this action against Putzmeister to recover damages for injuries he sustained while operating a cement pump which was manufactured by Putzmeister's predecessor. Putzmeister had purchased the assets of the predecessor pursuant to a sales agreement and bankruptcy court order. Plaintiff also sued the owner of the pump, Original Concrete Pumping Service (Original); however, Original is not a part of this appeal. The trial court granted Putzmeister's motion to dismiss the amended complaint, with prejudice, from which this Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) appeal is taken.

The sole issue presented on review is whether the trial court properly granted Putzmeister's motion to dismiss the complaint where it found that under Illinois law (see, *e.g., Hernandez v. Johnson Press Corp.* (1979), 70 Ill. App. 3d 664, 388 N.E.2d 770; *Nguyen v. Johnson Machine & Press Corp.* (1982), 104 Ill. App. 3d 1141, 433 N.E.2d 1104), the defendant asset purchaser does not become liable for the preacquisition torts of the original manufacturer, absent an express or implied assumption of liability. We find that the trial court properly followed the dictates of Illinois law.

The record reveals that plaintiff filed a negligence action against Original Pumping Service in which he sought damages for injuries to his hand sustained on July 24, 1987, while operating a concrete cement pump that was owned by Original. Original filed answers to interrogatories which stated that the pump was manufactured by Thomsen Equipment and that it was purchased from the same on or about May 8, 1981.

Plaintiff then amended his complaint joining Putzmeister, Inc., d/b/a Thomsen Equipment, Thomsen Equipment Company, and unknown owner or owners, d/b/a Thomsen Equipment Company, as defendants. In count II of the complaint, plaintiff alleged that Putz-

meister, doing business as Thomsen Equipment, designed, manufactured and sold the concrete pump which caused his injuries. He further alleged that the pump was unreasonably dangerous when it left defendant's control in that it had an unguarded nip point in a flapper valve.

Putzmeister filed a special and limited appearance and a motion to dismiss the amended complaint, with prejudice. The motion to dismiss alleged (1) that Thomsen Equipment Company, a California corporation (hereafter Predecessor), and not Putzmeister, manufactured, designed and sold the pump to Original; (2) that Putzmeister was not incorporated until June 1982 in Delaware under the name of Thomsen Equipment Company (the name was thereafter changed to Putzmeister, Inc.-Thomsen Division, and later to Putzmeister, Inc.); and (3) that Putzmeister acquired the assets of the predecessor, which had filed a chapter 11 bankruptcy petition in California, pursuant to an asset purchase agreement and bankruptcy order entered by the Federal court on September 3, 1982. Following the filing of additional pleadings, exhibits, affidavits, court documents, and Secretary of State corporate records, the trial court entertained oral argument on the motion to dismiss.

Putzmeister alleged that its acquisition of the predecessor's cement pump business does not fall within any of the exceptions to the general rule of nonliability of asset purchasers as established in *Hernandez*. On the other hand, plaintiff countered that Putzmeister's purchase of the predecessor's assets falls within the exceptions or, in the alternative, that Putzmeister is liable because of the "unique circumstances" by which it acquired the assets. The trial court dismissed count II of the complaint, with prejudice, and specifically rejected plaintiff's argument that the asset purchase therein was "unique." The court remarked that the purchase of a bankrupt corporation's assets and the continued employment of some of its middle level management personnel and officers by the successor corporation is hardly unique, but something "that happens everyday in Bankruptcy Court."

■ The generally accepted rule is that a corporation which merges with another corporation takes on the latter corporation's obligations and liabilities while a successor corporation which purchases the business assets of another corporation does not become liable for the debts of the seller in the absence of an express agreement to assume the seller's debts. Illinois has long applied this rule, which is based upon Illinois corporate law rather than strict liability principles, to determine the liability of an asset purchaser in a products claim. *Green v. Firestone Tire & Rubber Co.* (1984), 122 Ill. App. 3d 204,

460 N.E.2d 895; *Gonzalez v. Rock Wool Engineering & Equipment Co.* (1983), 117 Ill. App. 3d 435, 453 N.E.2d 792; *Nguyen,* 104 Ill. App. 3d 1141. See also *People ex rel. Donahue v. Perkins & Will Architects, Inc.* (1980), 90 Ill. App. 3d 349, 413 N.E.2d 29 (involving a *de facto* argument in a nonpersonal injury situation).

■ However, there are several exceptions to the general rule. As stated in *Hernandez,* the often-quoted exceptions to the rule of nonliability are:

"(1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations." See *Hernandez,* 70 Ill. App. 3d at 667.

■ The second exception has been interpreted to include a *de facto* merger. In *Donahue,* this court held that a purchaser of assets will not be liable under the theory of *de facto* merger or mere continuation in the absence of continuity of ownership. *Donahue,* although not a personal injury case, relied upon the criteria necessary to establish the existence of a *de facto* merger, as first set forth in *Hernandez* (70 Ill. App. 3d at 667) and reiterated in *Nguyen.* Those elements are stated as follows:

"(1) There is a continuation of the enterprise of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations.

(2) There is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation.

(3) The seller corporation ceases its ordinary business operations, liquidates and dissolves as soon as legally and practically possible.

(4) The purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation." *Hernandez,* 70 Ill. App. 3d at 667.

■ Here, it does not appear that Putzmeister's purchase of the predecessor's assets come within the exceptions to the general rule of nonliability of asset purchasers. With respect to the first exception,

agreement of assumption, it is clear that there was no agreement between the corporations to assume the preacquistion tort liabilities of the seller corporation. Although plaintiff presented evidence that Putzmeister took on some of the obligations of the predecessor prior to the closing date of the sale, we are nevertheless governed by the express provisions of the written document which dictates the agreement between the parties. The asset purchase agreement and the bankruptcy order expressly disclaim "charges and claims," which includes "without limitation *** product liability claims."

Neither is there sufficient evidence to demonstrate that the transaction was for the purpose of committing a fraud on creditors. This conclusion is logical notwithstanding the disparity between the value of the predecessor's debts and assets.

■ Similarly, the second and third exceptions, *de facto* merger and continuation, respectively, do not appear to be present here. As previously stated, all of the elements must be shown to establish a *de facto* merger. *Nguyen* determined that the absence of any single element is enough to defeat successor liability. Here, based upon a review of the affidavits of company officials, it seems there was neither continuity of enterprise nor continuity of ownership between the two corporations. No director of the predecessor ever was a director of Putzmeister. Putzmeister did not continue the product line of the predecessor; rather, the equipment produced by it was of its own design, although it marketed the equipment under the "Thomsen" trade name. No shareholder of the predecessor has ever been a shareholder of Putzmeister. Moreover, although some of the elements of merger were present here, including continuity of middle management employees, like the *Nguyen* case, there can be no successor liability absent a showing of common ownership between the seller and buyer.

Neither is plaintiff's argument persuasive that Putzmeister's purchase of the predecessor's assets is a "mere continuation" as defined in *Donahue*. While plaintiff cites *Donahue* for the proposition that a voluntary reorganization of a corporation by its shareholders makes the reorganized corporation liable under the mere continuation exception, he then plainly ignores or discounts the *Donahue* holding. The *Donahue* court denied the claim for successor liability on the ground that continuity of ownership was lacking. Similarly, we affirmed the *Donahue* premise in *Gonzalez*, a personal injury case, where a claim for successor liability based on a mere continuation of the seller's business was also rejected because of the lack of continuity of ownership. Accordingly, we believe the present factual matrix does not allow a deviation from the general rule of nonliability.

However, notwithstanding the well-established foregoing principles of law, plaintiff contends that based upon general principles of law and because of the discord found in Illinois cases regarding what is necessary to establish continuity of ownership, defendants should remain liable to pay damages to the victims of their unreasonably dangerous products even though the form or the ownership of the business has changed. He makes reference to other Illinois authorities that support the proposition that continuity of ownership should not be absolutely necessary to find a *de facto* merger or a mere continuation. This authority includes the legislative mandate that the surviving corporation is liable for its predecessor's obligations in a *de jure* merger (see Ill. Rev. Stat. 1989, ch. 32, par. 11.10(c)) and the rule which requires continuing partners to remain liable to the creditors of the first partnership even though there is no continuity of ownership.

■ In the reply brief, plaintiff continues his argument that courts should be guided by the substance rather than the form of the transaction when determining whether the successor corporation's purchase of the predecessor corporation's assets also creates liability for preacquisition obligations and torts of the predecessor. Plaintiff contends that Putzmeister exercised ownership-like control of its predecessor's affairs prior to closing the sale where it paid accounts payable, assumed bank obligations and controlled the management. As a result of the preclosing activities, coupled with the use of the name for a time period, continuity of location, continuity of officers and continuity of middle management, plaintiff urges that the cases relied upon by Putzmeister are factually distinguishable from the present case. A review of the cases, however, demonstrates that there are several similarities between the cases and the present factual matrix. For example, in *Nguyen*, the elements of continuity of management, location and business purpose were present. However, the court found that continuity of shareholders and a showing of common ownership between seller and buyer were absent.

Plaintiff also cites to cases in other States, which in grappling with the problem of holding successor businesses liable for the debts of predecessors without continuity of ownership in asset purchase situations have decided that continuity of ownership is not necessary. See *Ramirez v. Amsted Industries, Inc.* (1981), 86 N.J. 332, 431 A.2d 811; *Ray v. Alad Corp.* (1977), 19 Cal. 3d 22, 560 P.2d 3, 136 Cal. Rptr. 574; *Turner v. Bituminous Casualty Co.* (1976), 397 Mich. 406, 244 N.W.2d 873.

Thus, the plaintiff here, like plaintiffs in a recent opinion from this division, *Kaleta v. Whittaker Corp.* (1991), 221 Ill. App. 3d 705,

583 N.E.2d 567, also urges this court to adopt the "product line" approach to successor liability as set forth in the California case of *Ray*. Illinois law, however, to date remains the same; *Nguyen* rejected the analysis of the "product line" approach, and in *Gonzalez*, this court likewise refused to adopt the "product line" exception to the general rule of nonliability of a purchaser of assets.

The "product line" approach to successor liability is set forth in the California case of *Ray* (19 Cal. 3d 22, 560 P.2d 3, 136 Cal. Rptr. 574), and has been adopted in other State cases. (See *Turner*, 397 Mich. 406, 244 N.W.2d 873; *Ramirez*, 86 N.J. 332, 431 A.2d 811.) In Illinois in *Nguyen* (104 Ill. App. 3d 1141, 433 N.E.2d 1104), this court declined to address the specific issue, however, and rejected the analysis and results of the other States which did recognize the "product line" approach. Similarly in *Gonzalez v. Rock Wool Engineering* (117 Ill. App. 3d 435, 453 N.E.2d 792), we affirmed the dismissal of plaintiff's fourth amended complaint and thereby refused to adopt the "product line" exception to the general rule of nonliability of a purchaser of assets as set forth in *Ray* (19 Cal. 3d 22, 560 P.2d 3, 136 Cal. Rptr. 574).

■ Accordingly, based on our research, as set forth in the *Kaleta* opinion and therefore not necessary to restate here, we found that the "product line" approach to successor liability has been repeatedly rejected by Illinois courts for several legal reasons and policy considerations. (See *Gonzalez*, 117 Ill. App. 3d 435, 453 N.E.2d 792; *Nguyen*, 104 Ill. App. 3d 1141, 433 N.E.2d 1104; *Domine v. Fulton Iron Works* (1979), 76 Ill. App. 3d 253, 395 N.E.2d 19; *Hernandez*, 70 Ill. App. 3d 664, 388 N.E.2d 770; *Johnson v. Marshall & Huschart Machinery Co.* (1978), 66 Ill. App. 3d 766, 384 N.E.2d 141.) We decline to revisit the "product line" approach cases here; however, we will briefly review the Illinois cases' response thereto and this State's rationale for rejection of the doctrine.

In *Domine*, we held that the *Ray* doctrine was not in conformity with the law of strict liability in Illinois because the Illinois Supreme Court had specifically refused to impose strict liability upon a defendant who is outside of the original producing and marketing chain. (*Domine*, 76 Ill. App. 3d at 257, citing *Peterson v. Lou Bachrodt Chevrolet Co.* (1975), 61 Ill. 2d 17, 329 N.E.2d 785.) *Domine* further opined that the public policy of Illinois does not favor the extension of the doctrine of strict liability to a successor corporation.

*Hernandez* emphasized an additional reason to reject the "product line" exception in reliance on statements enunciated in *Leannais v.*

*Cincinnati, Inc.* (7th Cir. 1977), 565 F.2d 437. The court of appeals for the seventh circuit stated:

"In recent years, for a variety of reasons, many have thought it necessary to turn to the courts in search of solutions to social problems. Courts are ill-equipped, however, to balance equities among future plaintiffs and defendants. Such forays can result in wide-ranging ramifications on society, the contemplation of which is precluded by the exigencies of deciding a particular case presented on a limited record developed by present parties. Absent compelling necessity, therefore, a Federal Court should not impose the policy pronouncements of the Supreme Court of one state upon the citizens of another. Nor are we at liberty to impose our own view as to what the law of Wisconsin should be. As the Wisconsin Supreme Court has recognized, such broad public policy issues are best handled by legislatures with their comprehensive machinery for public output and debate." *Leannais*, 565 F.2d at 441.

Furthermore, in *Nguyen*, this court extensively reviewed several hypotheses for creating liability on the part of the successor corporation and rejected each of them. The court concluded that the "arguments offered by plaintiff do not justify imposing the predecessor's potential liability on the successor. *** Perhaps that law should be changed, but the change must come from the legislature." (*Nguyen*, 104 Ill. App. 3d at 1151.) We agree.

It is clear that Illinois courts have declined to accept the doctrine of assigning liability without fault in successor corporation cases. However, this rule of thumb has been guided by corporate law principles, where the contract and agreement between the parties govern. As previously stated, the plaintiff has raised some interesting arguments on appeal, particularly the use of a term he phrased as the successor's business identifiability with that of the predecessor. However, the implications of fraud, both pre-acquisition and post-acquisition, may be better raised and proved, if legitimate, where the legislature has set forth clear guidelines of what a successor corporation can and cannot do. These guidelines are set forth by statute in the other examples cited by plaintiff, such as the *de jure* corporation and the continuing partnership situations.

As stated in *Green v. Firestone Tire* (122 Ill. App. 3d 204, 460 N.E.2d 895), while the Illinois courts have been struggling with this issue, none have adopted the approach and most have looked to the legislature for direction in this area of law. The legislature's role in this situation is especially important in light of the other statutory

prerogatives governing corporations doing business in the State of Illinois.

Accordingly, in light of the foregoing decisions of this court and because the particular circumstances here do not mandate a different result, we affirm the trial court's dismissal of plaintiff's amended complaint, with prejudice.

■ Putzmeister seeks sanctions pursuant to Supreme Court Rule 375(b) (134 Ill. 2d R. 375(b)), on the ground that this appeal is frivolous as it is neither reasonably well-grounded in fact nor warranted by existing law or a good-faith argument for the extension, modification or reversal of existing law. *Singer v. Brookman* (1991), 217 Ill. App. 3d 870.

We have reviewed the record below and listened to counsel's arguments on appeal and his theory that the instant case presents "unique circumstances" that allow for deviation from the general rule of non-liability in successor corporation product injury cases. Although it does not appear that counsel's arguments are meritorious in this case, it cannot be said, based upon the facts here, the law in Illinois and other States, and the arguments advanced in the plaintiff's briefs, that a reasonably prudent attorney would not, in good faith, have brought the instant appeal. (See *Dreisilker Electric Motors, Inc. v. Rainbow Electric Co.* (1990), 203 Ill. App. 3d 304, 562 N.E.2d 970.) Accordingly, we deny Putzmeister's request for sanctions against the plaintiff.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY, P.J., and O'CONNOR, J., concur.