OXXFORD CLOTHES XX, INC.,
Plaintiff–Appellant,

v.

EXPEDITORS INTERNATIONAL
OF WASHINGTON, INC.,
Defendant–Appellee.

No. 97–1413.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 3, 1997.

Decided Sept. 30, 1997.

---

Ralph A. Mantynband (argued), Elizabeth F. Hartweg, Shefsky, Froelich & Devine, Chicago, IL, for Plaintiff–Appellant.

Michael L. Weissman (argued), McBride, Baker & Coles, Chicago, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, and MANION and KANNE, Circuit Judges.

POSNER, Chief Judge.

This diversity suit, brought (and dismissed) in federal district court, has a curi-

ous history. It begins with Oxxford Clothes, Inc., a manufacturer of expensive suits for men. The suits are made out of imported fabrics. For many years Oxxford had used Expeditors International of Washington, Inc. to clear these imports through customs pursuant to a contract in which Oxxford granted Expeditors a lien in the fabrics when they were in Expeditors' possession, so that Expeditors (which is the defendant in this suit) could be assured of collecting its charges for the customs-clearing service.

Oxxford's principal creditor was Heller Financial, Inc. On December 3, 1994, Heller made a contract with Oxxford in which it was agreed that Heller would foreclose its liens and transfer the assets of Oxxford obtained by the foreclosure to Tom James Company, a large clothing manufacturer, which in turn would transfer the assets to a newly created subsidiary of that company. After a name change, the subsidiary is now known as "Oxxford Clothes XX, Inc."; we'll call it "XX" to distinguish it from its predecessor. On December 9, XX notified Expeditors that it had bought Oxxford's assets. At the time, Oxxford owed Expeditors $97,000, representing the unpaid balance of charges for customs-clearing services. On December 12, XX notified Expeditors that there were no assets out of which to satisfy its predecessor's debt to Expeditors.

Expeditors was, no doubt, miffed. With reckless audacity XX then put its head in the lion's mouth by asking Expeditors to clear customs for it, even though its predecessor had repudiated the $97,000 debt. XX's lawyer explained at argument that it wanted to give Expeditors a chance to recoup some of the losses that Expeditors had incurred as a result of the repudiation!

As soon as a significant quantity of imported fabrics came into Expeditors' possession, which happened between December 14 and December 18, Expeditors told XX that it would not deliver them until XX paid it $97,000. Expeditors claimed to have possessory liens in the fabrics arising out of Oxxford's debt for that amount. XX was indignant. It believed it owed nothing to Expeditors other than the modest charges for Expeditors' services in clearing customs for the newly imported fabrics (the fabrics owned by XX rather than by its predecessor), because XX had not assumed Oxxford's debts. It brought this suit to obtain the release of the fabrics. It asked the court for a temporary restraining order (and later a preliminary injunction), which was denied after a brief hearing in which Expeditors' lawyer claimed without amplification that his client did have valid liens in the new shipments.

By now it was December 30. XX claims, and for purposes of this appeal we accept the claim (although skeptical), that without the shipments of fabrics that Expeditors had impounded XX would be unable to supply suits to its major retailer customers and as a result its business would be destroyed. It therefore knuckled under to what it regarded as Expeditors' extortionate demand and on January 3, 1995, negotiated a consent decree whereby Expeditors agreed to release the fabrics and transfer its so-called liens to XX in exchange for $75,000, which XX quickly paid.

Three weeks later, XX, pursuant to an amended complaint that it filed with leave of court, asked the district court to order Expeditors to return the $75,000. The ground was that Expeditors had failed to deliver the liens as promised because it had no liens. Expeditors was happy to give up its "liens"; the alleged fraud is that it had no liens. Expeditors denied fraud and asked the court to enforce the provision of the consent agreement in which XX had agreed, upon performance of the other terms of the agreement, to dismiss its suit. The court sided with Expeditors and ordered the suit dismissed with prejudice, precipitating this appeal.

XX's original suit was a suit to replevy the fabrics. The claim was that Expeditors lacked a legal justification for refusing to release XX's property to it. The claim became moot when, pursuant to the consent agreement, Expeditors released the fabrics to XX. The amended complaint touched off in effect a new suit, one claiming that Expeditors had obtained the $75,000 settlement from XX by fraud and duress. One count of the amended complaint seeks $75,000 in compensatory damages for the fraud and $5 million in punitive damages. The other seeks to

rescind the consent agreement on grounds of fraud, duress, and absence of consideration.

XX doesn't *really* want rescission. That would imply putting the parties back where they were when the consent agreement was signed—which would require XX to return the fabrics to Expeditors. What XX must have meant to do in the second count was seek to rescind its purchase of the liens on the ground that, the liens having been worth exactly nothing, the contract of sale is unenforceable for want of consideration. So, giving XX the benefit of the doubt, we have three theories of liability to consider: fraud, duress, and rescission.

■■■ A fourth candidate, but one that XX does not nominate, is mistake of law. *Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 118 F.3d 1157, 1163–65 (7th Cir.1997). XX paid $75,000 to Expeditors in the mistaken belief that the latter had a lien; it was a mistake of law because all the facts were known. XX was right not to advance such a theory, because where the mistake is the court's, the remedy is to appeal, not to mount a collateral attack on the judgment founded on the mistake. A motion under Fed. R.Civ.P. 60(b) asking the district court to set aside its judgment will not be allowed to do service for an appeal. *Parke–Chapley Construction Co. v. Cherrington*, 865 F.2d 907, 915 (7th Cir.1989); *McKnight v. United States Steel Corp.*, 726 F.2d 333, 337 (7th Cir.1984); *Bank of California, N.A. v. Arthur Andersen & Co.*, 709 F.2d 1174, 1177–78 (7th Cir.1983) (on pet. for reh.). It is even clearer that an independent suit is not a proper substitute for an appeal. Any mistake of law that is the premise of a preliminary injunction can be corrected by means of a direct appeal from the grant of the injunction. *Advent Electronics, Inc. v. Buckman*, 112 F.3d 267, 274 (7th Cir.1997); *Kinney v. Pioneer Press*, 881 F.2d 485, 493 (7th Cir. 1989); *Time Warner Cable v. Bloomberg L.P.*, 118 F.3d 917, 923 n. 6 (2d Cir.1997).

■■ The fraud claim is a nonstarter. Expeditors did not misrepresent any fact. It merely asserted a claim, based on facts known equally well to XX. It claimed that Oxxford's debt to it entitled it to hold on to XX's fabrics until the debt was paid. The claim was, as we shall see, meritless, and indeed frivolous. But since when is a frivolous claim a form of fraud? What would be particularly bizarre would be for a person against whom the frivolous claim was made to pay the claim and then turn around and sue the claimant for fraud, when what it should have done was simply to refuse to pay the claim, or if as in this case the claimant resorted to self-help to enforce his claim, to seek legal redress—which XX did. But then, unaccountably, it folded when the district court indicated that it was going to deny a preliminary injunction—unaccountably because the denial could have been appealed immediately, 28 U.S.C. § 1292(a)(1), and because XX could have asked us for injunctive relief pending the determination of its appeal, arguing irreparable harm and pointing out the feebleness of Expeditors' defense to the claim for replevin. Fed. R.App. P. 8(a); *Classic Components Supply, Inc. v. Mitsubishi Electronics America, Inc.*, 841 F.2d 163 (7th Cir.1988); *Chemical Weapons Working Group v. Department of the Army*, 101 F.3d 1360 (10th Cir.1996); *Half Moon Bay Fishermans' Marketing Ass'n v. Carlucci*, 857 F.2d 505, 506 (9th Cir.1988). Upon the obtaining of such relief and the posting of a bond, XX would have gotten the fabrics released to it and would not have had to enter into the consent agreement. If as it believes Expeditors' defense was frivolous, it could have obtained sanctions, making it whole for the legal and related costs of obtaining the release of the fabrics through legal action.

Alternatively, if XX could have purchased substitute fabrics in the open market and used them to make its suits, it could then have sought recovery of any excess expense incurred by this measure as damages in the replevin suit. *Sheppard v. Fagan*, 94 Ill. App.3d 290, 49 Ill.Dec. 856, 859, 418 N.E.2d 876, 879 (1981); *Doe v. Roe*, 289 Ill.App.3d 116, 224 Ill.Dec. 325, 335, 681 N.E.2d 640, 650 (1997); *Dr. Franklin Perkins School v. Freeman*, 741 F.2d 1503, 1520 (7th Cir.1984). XX claims, and in the posture of the case we accept, that the fabrics that Expeditors was holding as hostages for the repayment of Oxxford's debt to it were custom-made and could not be replaced in time to avert disas-

ter. Even so, there was the quick and simple remedy of appeal; and our basic point is that a frivolous claim is not, as XX believes, a fraudulent claim.

XX also argues that Expeditors committed "fraud on the court," by misrepresenting to the district court that it had valid liens. The term refers to conduct more egregious than anything here, conduct that might be thought to corrupt the judicial process itself, as where a party bribes a judge or inserts bogus documents into the record. *In re Met–L–Wood Corp.*, 861 F.2d 1012, 1018–19 (7th Cir.1988); *In re Whitney–Forbes, Inc.*, 770 F.2d 692, 698 (7th Cir.1985); *Baltia Air Lines, Inc. v. Transaction Management, Inc.*, 98 F.3d 640, 642–43 (D.C.Cir.1996). The only significance of the distinction is that, since fraud on the court is more serious than fraud on the opposing litigant, the party complaining about the fraud is not bound by the one-year limitation on motions to vacate a judgment because of fraud. Fed.R.Civ.P. 60(b). As XX's motion to set aside the consent judgment was filed well within a year, the characterization of Expeditors' fraud as fraud on the court is irrelevant. The question is, was there a fraud? A lie uttered in court is not a fraud on the liar's opponent if the opponent knows it's a lie yet fails to point this out to the court. If the court through irremediable obtuseness refuses to disregard the lie, the party has—to repeat what is becoming the refrain of this opinion—a remedy by way of appeal. Otherwise "fraud on the court" would become an open sesame to collateral attacks, unlimited as to the time within which they can be made by virtue of the express provision in Rule 60(b) on this matter, on civil judgments.

Whether Expeditors had liens was not a matter of private information that it could have concealed from XX. It was a matter of inference from facts (including documents, dates, intercorporate relations, and the ownership of the fabrics) and legal principles that were in XX's possession. Far from conceding the existence of the liens on the basis of phony assurances by Expeditors, XX contested their existence in the district court. Only it did so ineptly, so that the district court was left with the impression that Expe-

ditors had valid liens. Fraud in the legal process is not actionable if it is incapable of obstructing the opposing litigant. *Walsh v. McCain Foods Ltd.*, 81 F.3d 722, 726 (7th Cir.1996); *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 926 (1st Cir.1988); *In re M/V Peacock*, 809 F.2d 1403, 1405 (9th Cir.1987). An erroneous legal contention, being out in the open as it were, does not have obstructive capability, and is not fraud merely because if believed it would confer an advantage on the party making it. If that were the standard for fraud on the court, no civil judgments would be final; every legal error that a judge committed that had been invited by the winning litigant would be, prima facie, fraud on the court.

The claim of duress has a similar infirmity-despite surface appeal. Expeditors, having no shadow of a legal right to withhold the fabrics in its possession from XX, used XX's inability to cover for the missing fabrics as a lever for extorting the payment of a debt owed by someone else, namely Oxxford. And there was no shadow of a right, provided that Oxxford and XX are separate enterprises and the latter is not responsible for the former's debts. At argument Expeditors argued for the first time in this litigation that XX is really just the alter ego of Oxxford. Maybe so-maybe the three-sided transaction among Oxxford, Heller, and Tom James was a scheme for wiping out Oxxford's unsecured creditors (including Expeditors) without a declaration of bankruptcy, and the transfer of Oxxford's assets to XX a fraudulent conveyance. But the argument comes too late in the day to influence our decision; it is waived.

Another possibility, which Expeditors has argued throughout, is that XX voluntarily assumed its predecessor's contractual obligations. There is no indication it did. The general rule, in Illinois as elsewhere, is that a purchase even of all of a corporation's assets doesn't carry with it the assumption of the corporation's liabilities. *Unit Trainship, Inc. v. Soo Line R.R.*, 905 F.2d 160, 162 (7th Cir.1990) (applying Illinois law); *Shaw v. Republic Drill Corp.*, 810 F.2d 149 (7th Cir.1987) (per curiam) (applying Illi-

nois law); *Myers v. Putzmeister, Inc.*, 232 Ill.App.3d 419, 173 Ill.Dec. 130, 131, 596 N.E.2d 754, 755 (1992); *Fenderson v. Athey Products Corp.*, 220 Ill.App.3d 832, 163 Ill. Dec. 337, 339, 581 N.E.2d 288, 290 (1991). Among the assets of a corporation are its contracts—more precisely, the corporation's rights under its contracts, because the liabilities that the contracts create are not assets. The contract by which XX succeeded Oxxford recites that XX is acquiring the contracts *and other assets* of Oxxford, and this means, as in the *Shaw* and *Myers* cases cited above, the contract rights, not contract liabilities, of Oxxford; there is no intimation that it was also acquiring its liabilities.

■ So it's as if Expeditors had been exploiting a temporary, situational monopoly over one of its customers in order to obtain payment from another customer against whom it had no effective legal remedy. That sounds a lot like extortion, and almost like theft and ransom, with Expeditors "stealing" fabrics that have enormous value to XX because of the danger that without them XX's business will collapse, and then "ransoming" them to the owner for $75,000—in effect making XX buy the fabrics twice, first from the Italians and second from Expeditors. The fatal flaw in this ground of liability is, as before, XX's complete legal remedy. XX didn't have to pay Expeditors a cent. All it had to do, having failed to persuade the district court that this was indeed extortion, was to appeal to us and seek an injunction pending the decision of the appeal, as we explained before.

■ The hallmark of duress or extortion is that the victim has no feasible legal remedy. *JPM, Inc. v. John Deere Industrial Equipment Co.*, 94 F.3d 270, 272 (7th Cir. 1996); *Beijing Metals & Minerals Import/Export Corp. v. American Business Center, Inc.*, 993 F.2d 1178, 1185 (5th Cir. 1993); *Abbadessa v. Moore Business Forms, Inc.*, 987 F.2d 18, 23 (1st Cir.1993). Consider the famous case of *Alaska Packers' Ass'n v. Domenico*, 117 F. 99 (9th Cir.1902). The defendant hired seamen in San Francisco for a voyage to Alaska to fish for salmon. When the ship arrived in Alaska waters, the seamen announced that they wouldn't do·any work unless the defendant promised to pay them an additional wage beyond what was specified in their contract of employment. The defendant yielded, promising them the higher wages, but reneged when the ship returned to California. They sued—and lost. The promise had been made under duress because the defendant had had no feasible remedy against the seamen's demand. It could not have "covered" by hiring substitute seamen on the spot, given the brevity of the Alaska salmon season and the limited supply of seamen in Alaska. And it would not have been feasible for it to sue them, as the filing of many suits would have been necessary and the chances of collecting a significant judgment from each seaman at reasonable cost would have been remote. In our case the victim of so-called duress not only had but utilized an entirely feasible legal remedy, inexplicably failing to appeal and instead incurring the expense of what amounted to a brand new suit in the district court. See also *Industrial Representatives, Inc. v. CP Clare Corp.*, 74 F.3d 128, 129–30 (7th Cir.1996); *United States v. Stump Home Specialties Mfg., Inc.*, 905 F.2d 1117, 1121–22 (7th Cir. 1990); ·*Austin Instrument, Inc. v. Loral Corp.*, 29 N.Y.2d 124, 324 N.Y.S.2d 22, 272 N.E.2d 533 (1971).

■ XX's last argument is that the consent agreement, viewed, properly enough, as a contract, *Schering Corp. v. Illinois Antibiotics Co.*, 62 F.3d 903, 908 (7th Cir.1995); *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 286 (D.C.Cir.1993); *Johnson v. Robinson*, 987 F.2d 1043, 1046 (4th Cir.1993), is voidable because the liens that Expeditors sold to XX for $75,000 were worth nothing. *Meyer v. Marilyn Miglin, Inc.*, 273 Ill. App.3d 882, 210 Ill.Dec. 257, 263, 652 N.E.2d 1233, 1239 (1995); *Corroon & Black of Illinois, Inc. v. Magner*, 145 Ill.App.3d 151, 98 Ill.Dec. 663, 669, 494 N.E.2d 785, 791 (1986). They were indeed worth nothing. But they were not the whole of the consideration. In fact, they were not any part of the consideration. They were just a flourish in the consent agreement—and what would a document drafted by a lawyer be without flourishes? The consideration was the release of the fabrics, which was

worth a lot to XX. If Expeditors had no right to hold on to the fabrics, it had no right to sell that right back to XX; but this is just the duress claim redescribed, and it fails for the reason we have given.

AFFIRMED.