**GENERAL ELECTRIC CAPITAL CORPORATION, Plaintiff–Appellant,**

v.

**LEASE RESOLUTION CORPORATION, Defendant–Appellee.**

No. 96–2310.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 3, 1996.

Decided Oct. 24, 1997.

Quinton F. Seamons, Alexander Terras (argued), Todd A. Rowden, Wilson & McIlvaine, Chicago, IL, for Plaintiff–Appellant.

Jerome H. Torshen (argued), Eric J. Rietz, Zoran Draqutinovich, Torshen, Spreyer & Garmisa, Mitchell M. Iseberg, Jeffrey Schulman, Michael Ellis Pildes, Philip S. Wolin, Wolin & Rosen, Chicago, IL, for Defendant–Appellee.

Before ESCHBACH, FLAUM, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

On May 11, 1995, the district court dismissed two counts of General Electric Capital Corporation's ("GE Capital") fourth amended complaint for failure to state claims upon which relief may be granted. In making its determination, the court took judicial notice of facts from a prior unrelated proceeding and from a private document submitted in that proceeding. By taking judicial notice without determining that the facts were undisputed and that the sources relied upon have an accuracy that cannot reasonably be questioned, the district court erred. *See* Fed.R.Evid. 201(b). Reviewing GE Capital's assertions without these facts, we reverse the court's dismissal of the fraudulent

transfer claim but affirm its dismissal of the successor liability claim.

## I. HISTORY

Prior to March 4, 1993, Datronic Rental Corporation ("Rental") was the general partner of seven publicly traded limited partnerships that purchased and managed equipment lease portfolios. Datronic Aero, Inc. ("Aero") was a subsidiary of Rental, and Edmund J. Lopinski, Jr. was Rental's president and ninety-five percent shareholder.

On December 23, 1991, GE Capital financed the acquisition of an airplane by loaning $2,100,000 to Aero. Aero's sole business activity was to purchase and hold the airplane. In consideration for the loan, Aero executed a promissory note payable to GE Capital. GE Capital secured the loan with a mortgage on the airplane. In addition, GE Capital received a corporate guaranty from Rental and personal guaranties from Lopinski and Timothy C. Bullard, another executive officer of Rental.

By May 20, 1992, Aero was delinquent in its payments. GE Capital declared a default and demanded return of the airplane; this demand was refused. In response, GE Capital replevied the airplane. A court-approved sale of the airplane produced $1,965,000, leaving a deficiency of $175,000 plus costs and expenses. Under the terms of the financing documents, Aero, Rental, Lopinski, and Bullard were liable for the deficiency. On September 13, 1994, GE Capital obtained a judgment against Aero and Rental, jointly and severally, for $199,425.18.

Meanwhile, in early 1992, an investigation revealed that Lopinski had "looted" the limited partnerships that Rental managed. This revelation forced Lopinski to surrender control of Rental and place his controlling stock in a voting trust. On May 18, 1992, John Ventre, a limited partner, filed a class action lawsuit in the district court against Rental, Lopinski, Bullard, and others alleging that the defendants looted the limited partnerships and engaged in unlawful conduct that included violations of state and federal securities laws. The district court certified a class of 35,000 limited partners on August 14, 1992.

On March 4, 1993, the class settled its claims. As part of the settlement, Rental transferred ninety-five percent of its assets to Lease Resolution Corp. ("LRC") in exchange for a release from pending legal claims. LRC is a new corporation, organized to perform the same services Rental had performed and substituted as general partner in Rental's stead. It occupies the same physical location and offices from which Rental has operated its business. As provided by Fed. R. Civ. P. 23, the district court approved the settlement, finding that the settlement was fair, reasonable, and adequate.

The settlement required that 95% of any proceeds Rental received from the settlement agreement would be assigned and paid to the Datronic Limited Partnerships. *See* Fourth Amended Complaint para. 17. The other 5% would remain for the payment of debts and reasonable expenses. After the settlement, Rental ceased conducting business. *See id.* Also, Aero was without assets since GE Capital had already replevied its sole asset. GE Capital believes the transfer of assets from Rental to LRC prevented Rental from satisfying its obligations.

On May 11, 1993, GE Capital brought an action against LRC[1] to recover its $170,500 claim against Rental from LRC. LRC moved to dismiss this complaint on June 14, 1993. In response, GE Capital sought and was granted leave to file a third amended complaint. On October 26, 1993, LRC filed a motion to dismiss three counts of this complaint.

The district court granted LRC's motion on March 16, 1994. The court specifically found that GE Capital "has failed to allege the *de facto* merger and fraud exceptions to the general rule of nonliability for successor corporations. Plaintiff has failed to allege

1. GE Capital instituted its debt collection against Rental and Aero prior to the settlement agreement. Initially, the district court consolidated GE Capital's action to recover its debt with the limited partners' class action. Thus, this post-settlement action against LRC was GE Capital's second amended complaint.

any continuity of shareholders, which is required to state a claim against LRC for *de facto* merger." *General Electric Capital Corp. v. Datronic Aero, Inc.*, No. 92 C 3828, 1995 WL 296957 (N.D.Ill. May 12, 1995) (order granting LRC's motion to dismiss). GE Capital also failed to set forth its allegations of fraud with particularity as required by Fed.R.Civ.P. 9(b) ("Rule 9(b)"). *See id.* The court, however, allowed GE Capital to file another revised complaint. GE Capital refiled on March 31, 1994.

GE Capital directed two counts of this fourth amended complaint against LRC. Count IV alleged that Rental failed to receive "reasonably equivalent value" for its transfer of assets to LRC in violation of the Illinois Uniform Fraudulent Transfer Act, 740 Ill. Comp. Stat. 160/5 (West 1993). Complaint ¶¶ 36–43 ("fraudulent transfer claim"). Count V claimed that LRC is simply a continuation of Rental and therefore is obligated for the liabilities of Rental as a successor corporation. *See id.* ¶¶ 44–55 ("successor liability claim"). On April 20, 1994, LRC moved to dismiss this complaint, arguing that GE Capital has failed to plead fraud sufficiently in Count IV in violation of Rule 9(b) and that GE Capital has failed to state a claim upon which relief may be granted in Counts IV and V in violation of Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)").

On May 11, 1995, the district court dismissed Counts IV and V of GE Capital's final complaint with prejudice. In dismissing Count V, it held that the court's prior decision that "the settlement agreement was 'fair, reasonable, and adequate' negates any claim by GE that the transfer of Rental's assets to LRC was not 'for 'reasonably equivalent value.'" *General Electric Capital Corp. v. Datronic Aero, Inc.*, No. 92 C 3828, slip op. at 15, 1995 WL 296957 (N.D.Ill. May 12, 1995) (quoting *Ventre v. Datronic Rental Corp.*, No. 92 C 3289, 1993 WL 524377 (N.D.Ill. Dec. 13, 1993) (order approving settlement)). The court made two determinations in dismissing Count V. First, the court held that GE Capital failed to state a claim because it failed to allege continuity of ownership. *See id.* at 14. Second, it held that "the settlement agreement demonstrates a lack of continuity of ownership between Rental and LRC, thereby precluding GE from asserting continuity of ownership between those two corporations." *Id.* at 15.

## II. ANALYSIS

Although the district court addressed LRC's motions to dismiss under Rules 9(b) and 12(b)(6) together, we will discuss them separately for clarity's sake, applying our *de novo* standard of review. *See City Nat'l Bank v. Checkers, Simon & Rosner*, 32 F.3d 277, 281 (7th Cir.1994). We agree with the district court that GE Capital has pled its fraudulent transfer claim with sufficient particularity to satisfy Rule 9(b). We, however, are unable to accept the district court's use of judicial notice of prior proceedings in dismissing GE Capital's claims under Rule 12(b)(6). We therefore review these claims without the facts elicited from the prior proceeding.

### A. Rule 9(b) Motion to Dismiss

Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The circumstances of fraud or mistake include " 'the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir.1994) (quoting *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir.1992)); *see also DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990) (reasoning that Rule 9(b) particularity "means the who, what, when, where, and how: the first paragraph of any newspaper story").

GE Capital does not allege a common law fraud violation; instead, it claims that LRC violated the Illinois Uniform Fraudulent Transfer Act. 740 Ill. Comp. Stat. 160/5 ("IUFTA"). This statute protects against two kinds of fraudulent transfers: transfers with an actual intent to defraud and transfers which the law considers fraudulent (i.e., constructive fraud or fraud in law). GE Capital has alleged constructive fraud in its Fourth

Amended Complaint. Sections 5(a)(2)(A) & (B) of IUFTA establish a presumption that constructive fraud has occurred where 1) the debtor made a voluntary transfer; 2) at the time of the transfer, the debtor had incurred obligations elsewhere; 3) the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer; and 4) after the transfer, the debtor failed to retain sufficient property to pay the indebtedness.[2] *See id.; see also In re Martin*, 145 B.R. 933, 945 (Bankr.N.D.Ill.1992); *In re Aluminum Mills*, 132 B.R. 869, 888 (Bankr. N.D.Ill.1991); *Gendron v. Chicago & North W. Transp. Co.*, 139 Ill.2d 422, 151 Ill.Dec. 545, 552, 564 N.E.2d 1207, 1214 (1990); *Anderson v. Ferris*, 128 Ill.App.3d 149, 83 Ill.Dec. 392, 395, 470 N.E.2d 518, 521 (1984). Because this statute creates a cause of action for constructive fraud that requires neither evidence of actual intent to defraud nor a specific misrepresentation by the defendant, we will evaluate whether GE Capital has plead the circumstances surrounding the elements of this statutory cause of action with

sufficient particularity to satisfy Rule 9(b). *Accord* Fed. R. Bankr.P. 7009 (applying Fed. R.Civ.P. 9(b) in adversarial bankruptcy proceedings, including violations of 11 U.S.C. § 548(a)(2) for transfers in which debtor received less than reasonably equivalent value).

Contrary to LRC's assertions[3] that GE Capital has failed to plead fraud sufficiently, the allegations of the Fourth Amended Complaint are well within the pleading requirements of Rule 9(b). Rule 84 provides that "[t]he forms contained in the Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate." Fed.R.Civ.P. 84. Form 13 provides an example of a complaint on a joint claim to recover debt and to void a fraudulent conveyance.[4] It simply requires 1) an allegation of jurisdiction, 2) a statement of the date and the conditions under which the defendant executed a promissory note to the plaintiff, 3) a statement that the defendant owes the plaintiff the amount, 4) a description of the events surrounding the defendant's conveyance of

---

2. The Illinois Uniform Fraudulent Transfer Act states:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

740 Ill. Comp. Stat. 160/5(a).

3. LRC raises two additional arguments. First, it contends that the transfer did not constitute constructive fraud because Illinois allows a debtor to sell all of its assets to one creditor in satisfaction of all or part of that creditor's claims. Second, Datronic claims that GE Capital cannot recover as a matter of law under the Illinois Uniform Fraudulent Transfer Act as no transaction occurred between Datronic and LRC. It is inappropriate, however, for this Court to address these challenges to GE Capital's well pleaded asser-

tions on review of a motion to dismiss. At this stage, we must accept these well pleaded assertions and draw all reasonable inferences in GE Capital's favor. *See Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir.1996); *Harris v. City of Auburn*, 27 F.3d 1284, 1285 (7th Cir.1994).

4. Form 13 requires:

1. Allegation of jurisdiction.

2. Defendant C.D. on or about _____ executed and delivered to plaintiff a promissory note [in the following words and figures: (here set out the note verbatim) ]; [a copy of which is hereto annexed as Exhibit A]; [whereby defendant C.D. promised to pay plaintiff or order on _____ the sum of five thousand dollars with interest thereon at the rate of _____ percent. per annum].

3. Defendant C.D. owes to plaintiff the amount of said note and interest.

4. Defendant C.D. on or about _____ conveyed all his property, real and personal [or specify and describe] to defendant E.F. for the purpose of defrauding plaintiff and hindering and delaying the collection of the indebtedness evidenced by the note above referred to.

Wherefore plaintiff demands:

(1) That plaintiff have judgment against defendant C.D. for _____ dollars and interest; (2) that the aforesaid conveyance to defendant E.F. be declared void and the judgment herein be declared a lien on said property; (3) that plaintiff have judgment against the defendant for costs.

Fed.R.Civ.P. Appendix of Forms 13.

all of his property to the transfer recipient for the purpose of defrauding and for delaying the collection of payment by the plaintiff,[5] and 5) the plaintiff's demand of the court.

GE Capital has pled these elements with sufficient particularity. The Fourth Amended Complaint states the following allegations: The promissory note and guaranties for the airplane were executed on December 23, 1991. *See* Complaint ¶¶ 8–10. Aero defaulted on its payments and GE Capital responded by replevying the airplane and obtaining a judgment against its guarantors (including Rental) for the remaining amount. *See id.* ¶¶ 12–13. Rental settled an unrelated class action on March 4, 1993. *See id.* ¶ 15. As part of the settlement, Rental "transferred, assigned and conveyed substantially all of its assets to LRC in exchange for a release of pending legal claims against Rental." *Id.* Rental allegedly did not receive from LRC or the limited partnerships any reasonably equivalent value that would be applied to the deficiency due GE Capital. *See id.* ¶ 37. This transfer rendered Rental insolvent and "effectively precluded Rental from meeting any deficiency obligation to GE Capital for the aircraft under Rental's guaranty." *Id.* ¶ 15. Finally, GE Capital asked the district court 1) to enter a judgment for the deficiency plus prejudgment interest and attorneys' fees, cost and expenses and 2) to declare the transfer of assets from Rental to LRC null and void to the extent of this judgment. *See id.* ¶ 43. This complaint has sufficiently detailed the circumstances surrounding LRC's alleged constructive fraud. We therefore affirm the district court's denial of LRC's motion to dismiss under Rule 9(b).

**B. LRC's Rule 12(b)(6) Motions to Dismiss**

[3] A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(6). Dismissal of an action under this motion is warranted if the plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *See Conley v. Gib-*

*son,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Travel All Over the World v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1429–30 (7th Cir.1996); *Triad Assocs., Inc. v. Chicago Hous. Auth.,* 892 F.2d 583, 586 (7th Cir.1989). We review a district court's grant of a 12(b)(6) motion *de novo,* accepting all of the well-pleaded allegations in the complaint as true, *see Harris,* 27 F.3d at 1285, and drawing all reasonable inferences in favor of the plaintiff, *see Zemke,* 100 F.3d at 513.

[4] In response to an ordinary 12(b)(6) motion, a court simply examines the allegations in the complaint to determine whether they pass muster. *See* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 299 (2d ed.1990). If a district court considers matters outside the pleadings, our procedural rules require that "the motion shall be treated as one for summary judgment" under Fed.R.Civ.P. 56. Fed.R.Civ.P. 12(b). Under this converted motion, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Id.* The consideration of outside matter without converting the motion may result in reversible error. *See Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972); *Travel All Over the World,* 73 F.3d at 1431; *see also Fleischfresser v. Directors of Sch. Dist. 200,* 15 F.3d 680, 684 & n. 8 (7th Cir.1994) (noting that reversal may be necessary if district court did not provide adversely affected party with notice and opportunity to respond); *Malak v. Associated Physicians, Inc.,* 784 F.2d 277, 280–81 (7th Cir. 1986) (requiring potentially disputed material issue of fact to justify reversal of dismissal for failure to give proper notice).

[5] The courts, however, have crafted a narrow exception to this rule to permit a district court to take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment. *See, e.g., Jefferson v. Lead Indus. Ass'n, Inc.,* 106 F.3d 1245, 1250 n. 14 (5th Cir.1997); *Doherty v.*

---

5. Because the Illinois statute permits plaintiffs to allege fraudulent transfers for failure to receive reasonably equivalent value instead of requiring

evidence of a specific intent to defraud, we have substituted this element of the Illinois statute into the requirements of Form 13.

*City of Chicago*, 75 F.3d 318, 325 n. 4 (7th Cir.1996); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir.1994); *Pension Ben. Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196–97 (3d Cir.1993); *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1225 (D.C.Cir.1993); *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991); 5A Wright & Miller § 1357, at 299 (noting the exemption applies to "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint"). This exception has allowed courts to avoid unnecessary proceedings when an undisputed fact in the public record establishes that the plaintiff cannot satisfy the 12(b)(6) standard. We review the district court's decision to take judicial notice for an abuse of discretion. *See Johnson v. Chater*, 108 F.3d 942, 946 (8th Cir.1997); *York v. American Tel. & Tel. Co.*, 95 F.3d 948, 958 (10th Cir.1996); *Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 458 (9th Cir.1995).

In this matter, GE Capital claims that the district court erroneously took judicial notice of a tangential class action settlement to dismiss both its fraudulent transfer claim and its successor liability claim. First, the lower court used its finding that the terms of the class action settlement agreement were "fair, reasonable, and adequate" to contradict GE Capital's allegation that the transfer of assets from Rental to LRC was not for reasonably equivalent value. *GE Capital*, slip op. at 12–13, 1995 WL 296957. Then, it employed the settlement agreement's statement that "LRC is a Delaware, nonstock, not-for-profit corporation," *Ventre v. Datronic Rental Corp.*, No. 92 C 3289, 1993 WL 524377, Stipulation of Settlement ¶ 67, to demonstrate "a lack of continuity of ownership between Rental and LRC, thereby precluding GE [Capital] from asserting continuity of ownership between those two corporations." *GE Capital*, slip op. at 15, 1995 WL 296957. *GE Capital* believes that the court's failure to treat LRC's motion as one for summary judgment and provide the litigants with notice and an opportunity to respond constituted reversible error. *See Travel All Over the World*, 73 F.3d at 1430; *R.J.R. Servs., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir.1989).

1. Judicial Notice of Court Records

A court may take judicial notice of an adjudicative fact that is both "not subject to reasonable dispute" and either 1) "generally known within the territorial jurisdiction of the trial court" or 2) "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b); *see also Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir.1995) ("In order for a fact to be judicially noticed, indisputability is a prerequisite."). Judicial notice is premised on the concept that certain facts or propositions exist which a court may accept as true without requiring additional proof from the opposing parties. It is an adjudicative device that substitutes the acceptance of a universal truth for the conventional method of introducing evidence. *See York*, 95 F.3d at 958; *Wesley–Jessen Div. of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862, 865 (7th Cir.1983). Judicial notice, therefore, merits the traditional caution it is given, and courts should strictly adhere to the criteria established by the Federal Rules of Evidence before taking judicial notice of pertinent facts. *See* Fed.R.Evid. 201(b) advisory committee's note.

At first glance, it seems appropriate for the district judge to take judicial notice of a finding he previously made. "The most frequent use of judicial notice of ascertainable facts is in noticing the contents of court records." 21 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure: Evidence* § 5106, at 505 (1st ed. 1977 & Supp.1997). Like other court records, judicial approval of a class action settlement is an appropriate subject for judicial notice because it is a source "whose accuracy cannot reasonably be questioned." Fed. R.Evid. 201(b); *see also Opoka v. INS*, 94 F.3d 392, 394 (7th Cir.1996) (recognizing that proceedings in other courts, both inside and outside the federal system, may be judicially noticed); *Scholes v. Lehmann*, 56 F.3d 750, 762 (7th Cir.1995) (allowing judicial notice of facts recited in a plea agreement); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir.1994) (confirming that court documents

from state proceeding are noticeable); *Philips Med. Sys. Int'l v. Bruetman*, 982 F.2d 211, 215 (7th Cir.1992) (approving judicial notice of a related default judgment); *see also Locicero v. Leslie*, 948 F.Supp. 10, 12 (D.Mass.1996) (taking judicial notice of settlement hearing transcript); *Citizens for a Better Env't-Cal. v. Union Oil Co.*, 861 F.Supp. 889, 896 (N.D.Cal.1994) (taking judicial notice of related consent decree), *aff'd*, 83 F.3d 1111 (9th Cir.1996). Therefore, if the finding taken from the prior proceeding is "not subject to reasonable dispute," then the court has satisfied the evidentiary criteria for judicial notice.[6] *See* Fed.R.Evid. 201(b).

The problem in this case is that we question the evidentiary value of the earlier approval of a class action settlement in determining whether the transfer was not for reasonable value. In other words, a reasonable doubt exists about the application of the earlier finding to the fraudulent transfer claim in this proceeding. While most courts abbreviate the discussion of their analysis to "whether the proposed settlement is lawful, fair, reasonable, and adequate," *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir.1996), inspection of a settlement entails "a careful inquiry into the fairness of the settlement *to the class members* before allowing it to go into effect." *Mars Steel Corp. v. Continental Ill. Nat. Bank & Trust Co.*, 834 F.2d 677, 682 (7th Cir.1987) (emphasis added). To make this determination, a district court considers: 1) the strength of the plaintiff's case on the merits measured against the terms of the settlement; 2) the complexity, length, and expense of continued litigation; 3) the amount of opposition to the settlement among affected parties; 4) the presence of collusion in gaining a settlement; 5) the

stage of the proceedings; and 6) the amount of discovery completed. *See Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 308 (7th Cir.1985); *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir.1985); *see also In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Litig.*, 55 F.3d 768, 785 (3d Cir.1995) (highlighting nine-factor test to establish whether settlement is fair, reasonable, and adequate).

The district court's earlier analysis of the transfer from Rental to LRC focuses solely on whether the settlement was fair to the passive class members. A determination that the settlement was fair, reasonable, and adequate for these plaintiffs does not answer GE Capital's allegation that Rental gave away ninety-five percent of its assets without receiving reasonably equivalent value. It is possible that the settlement transaction is simultaneously fair for the class action plaintiffs because they receive assets worth at least as much as their claims and fraudulent to prior unsecured creditors like GE Capital because Rental's assets may be worth substantially more than the value of the class action claims. At this stage in the litigation, no one knows whether Rental's assets are more valuable because the district court shut down the conventional fact finding process by taking judicial notice. The "fairness" of this transaction is not equivalent to a finding that the transaction was not fraudulent. Thus, we believe the district court abused its discretion by taking judicial notice of this earlier finding without establishing that the fact may indisputably be applied in the later proceeding. *See Jones*, 29 F.3d at 1553 (vacating summary judgment in which previously litigated facts do not "indisputably establish

**6.** To protect against improper reliance on facts from prior proceedings, some appellate decisions have refused to allow a court to take judicial notice of any adjudicative fact in a court record for the truth of the matter asserted. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (concluding that a court "may take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation"); *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir.1992) (holding that a "court may take judicial notice of a document filed in another court 'not for the

truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings'") (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir.1991)).

We agree that courts generally cannot take notice of findings of fact from other proceedings for the truth asserted therein because these findings are disputable and usually are disputed. However, it is conceivable that a finding of fact may satisfy the indisputability requirement of Fed.R.Evid. 201(b). This requirement simply has not been satisfied in this case.

that Jones refused to work"); *Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 895 (10th Cir.1994) (reversing summary judgment because earlier finding that employee was the most qualified is not "universal truth"); *Holloway v. Lockhart*, 813 F.2d 874, 878–79 (8th Cir.1987) (reversing summary judgment in which prior determination that prison guard's use of tear gas was reasonable and necessary precluded relitigation through judicial notice).

The application of a previous finding to a latter proceeding must be beyond reasonable dispute before a court may take judicial notice because "the effect of taking judicial notice under Rule 201 is to preclude a party from introducing contrary evidence and, in effect, directing a verdict against him as to the fact noticed." *Jones*, 29 F.3d at 1553. " 'The key to a fair trial is opportunity to use the appropriate weapons (rebuttal evidence, cross-examination, and argument) to meet adverse materials that come to the tribunal's attention.' " Fed.R.Evid. 201(b) advisory committee's note (quoting Kenneth Culp Davis, *A System of Judicial Notice Based on Fairness and Convenience, in Perspectives of Law* 69, 93 (1964)). If a court takes judicial notice of a fact whose application is in dispute, the court removes these weapons from the parties and raises doubt as to whether the parties received a fair hearing.

Moreover, if a court could take judicial notice of a fact simply because it was found to be true in a previous action, the doctrine of collateral estoppel would be superfluous. *See Jones*, 29 F.3d at 1553; *Holloway*, 813 F.2d at 879. A plaintiff cannot be collaterally estopped by an earlier determination in a case in which the plaintiff was neither a party nor in privity with a party. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n. 7, 99 S.Ct. 645, 649 n. 7, 58 L.Ed.2d 552 (1979); *Blonder–Tongue Lab., Inc. v. University of Ill. Found.*, 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971); *Hansberry v. Lee*, 311 U.S. 32, 40, 61 S.Ct. 115, 117, 85 L.Ed. 22 (1940). Due process prohibits the use of collateral estoppel in these instances because the plaintiff has never been afforded the opportunity to present its evidence and arguments on the claim. *See Blonder–Tongue*, 402 U.S. at 329, 91 S.Ct. at 1443; *Hansberry*, 311 U.S. at 40, 61 S.Ct. at 117. GE Capital cannot be collaterally estopped from litigating its fraudulent transfer claim because it was neither a party to the class action litigation nor in privity with a party in that action. For situations like the one at issue, we cannot allow a court to achieve through judicial notice what it cannot achieve through collateral estoppel. A district court may not take judicial notice of fact where its application may be reasonably disputed because use of this evidentiary device in this manner "would abrogate the fundamental requirement of due process." *Holloway*, 813 F.2d at 878.

Thus, it was error not to determine whether application of earlier finding was "not subject to reasonable dispute" as required by Fed.R.Evid. 201(b). After reviewing the well pleaded allegations in this claim and ignoring these outside materials, we hold that Count IV of the complaint satisfies Rule 12(b)(6). We therefore reverse the district court's dismissal of GE Capital's fraudulent transfer claim.

### 2. Judicial Notice of a Settlement Agreement

The district court also relied on language from the settlement agreement itself in dismissing GE Capital's successor liability claim. The general rule for successor liability in Illinois is that

a corporation which merges with another corporation takes on the latter corporation's obligations and liabilities while a successor corporation which purchases the business assets of another corporation does not become liable for the debts of the seller in the absence of an express agreement to assume the seller's debts.

*Myers v. Putzmeister, Inc.*, 232 Ill.App.3d 419, 173 Ill.Dec. 130, 131, 596 N.E.2d 754, 755, *appeal denied*, 146 Ill.2d 632, 176 Ill. Dec. 804, 602 N.E.2d 458 (1992). Exceptions to this rule include "where the transaction amounts to a consolidation or merger of the purchaser or seller corporation" and "where the purchaser is merely a continuation of the

seller." *Id.* 173 Ill.Dec. at 132, 596 N.E.2d at 756 (quoting *Hernandez v. Johnson Press Corp.*, 70 Ill.App.3d 664, 26 Ill.Dec. 777, 779, 388 N.E.2d 778, 780 (1979)). However, "a purchaser of assets will not be liable under the theory of *de facto* merger or mere continuation in the absence of continuity of ownership." *Id.; see also Nilsson v. Continental Mach. Mfg. Co.*, 251 Ill.App.3d 415, 190 Ill. Dec. 579, 581, 621 N.E.2d 1032, 1034 (1993).

In Count V, GE Capital alleged that LRC has stepped into Rental's shoes as the transferee of all of Rental's assets and continued Rental's business by managing the Limited Partnerships. GE Capital, however, failed to allege any continuity of ownership; in fact, it conceded that LRC "was created to facilitate a settlement of the Class Action and was, and is, *controlled by plaintiff[s] in the Class Action and the attorneys for the plaintiff[s]* in the Class Action." Complaint para. 49 (emphasis added). In dismissing this count, the district court relied on a private settlement agreement to establish that "LRC is a Delaware, non-stock, not-for-profit corporation organized solely for the purpose of serving as general partner of the Limited Partnerships." *GE Capital,* slip op. at 15, 1995 WL 296957 (quoting Stipulation of Settlement ¶ 67).

The lower court erroneously relied on this private document. A court may only take judicial notice from sources "whose accuracy cannot reasonably be questioned." Fed. R.Evid. 201(b); *see Hennessy,* 69 F.3d at 1354–55; *Henson,* 29 F.3d at 284 (affirming lower court's reliance on public court documents filed in an earlier proceeding). In *Hennessy,* this Court analyzed the propriety of taking judicial notice of a company's 10–K form which was filed with the Securities and Exchange Commission to determine the size of the company. 69 F.3d at 1354. In affirming the district court's refusal to take judicial notice, we decided that "the question ... was not capable of accurate and ready determination by resort to the 10–K" because the form covered three divisions of the company. *Id.* at 1355.

The question at issue here is whether continuity of ownership exists between the purchaser and the seller of assets in the settlement transaction. This question is not capable of accurate and ready determination by relying on an agreement drafted by the two parties who have the most to lose if the plaintiff establishes that continuity existed. Although we are not suggesting such activity took place in this litigation, it is not too Machiavellian to believe that a party to a settlement may intentionally insert (or accept) misleading or erroneous language into an agreement for its later benefit in tangentially related litigation. A settlement agreement has none of the indicia of trustworthiness found in a public record or a well-established learned treatise like Gray's Anatomy. *See United States v. Esquivel,* 75 F.3d 545, 549 (9th Cir.1996) (taking judicial notice of 1990 census data is appropriate); *Carley v. Wheeled Coach,* 991 F.2d 1117, 1126 (3d Cir.1993) (refusing to take notice of government test on vehicle rollovers because results are not "readily provable through a source whose accuracy cannot be reasonably questioned"); *Cofield v. Alabama Pub. Serv. Comm'n,* 936 F.2d 512, 517 (11th Cir.1991) (refusing to accept publication in daily newspaper as source that establishes facts as indisputable). We therefore believe that the district court erred in relying on a private settlement document for the truth of facts asserted therein without previously establishing why it is a source "whose accuracy cannot reasonably be questioned." Fed. R.Evid. 201(b)(2).

■ Nevertheless, we may consider the error harmless and affirm if Rule 12(b)(6) dismissal would have been appropriate without examination of the extrinsic documentation. *See In the Matter of Wade,* 969 F.2d 241, 249 (7th Cir.1992). On March 16, 1994, the court dismissed GE Capital's successor liability claim in its Third Amended Complaint because it failed to allege continuity of ownership. *GE Capital Corp.,* No. 92 C 3828, 1995 WL 296957 (N.D.Ill. May 12, 1995). After the court permitted GE Capital to refile, plaintiff again did not allege continuity of ownership between Rental and LRC. Complaint para. 44–55. Since Illinois law strictly demands that a plaintiff establish continuity of ownership to recover for de facto merger or mere continuation, the dis-

trict court correctly dismissed the count for failure to state a claim upon which relief may be granted. *See R.J.R. Servs.*, 895 F.2d at 281 ("If the complaint fails to allege a requisite element necessary to obtain relief, dismissal is in order.").

### 3. Dismissal of Claim with Prejudice

 Finally, the court did not abuse its discretion by denying GE Capital leave to amend its complaint for a fifth time. *GE Capital Corp.*, slip op. at 16, 1995 WL 296957 (noting that "repleading would be futile"). Even though Rule 15(a) provides that "leave shall be freely given when justice so requires," Fed.R.Civ.P. 15(a), a district court may deny leave to amend for undue delay, bad faith, dilatory motive, prejudice, or futility. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997); *Arazie v. Mullane*, 2 F.3d 1456, 1464 (7th Cir.1993). The opportunity to amend a complaint is futile if "'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Burlington Coat*, 114 F.3d at 1434 (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir.1996)). This standard is the same standard of legal sufficiency that applies under Rule 12(b)(6). *See id.; Glassman*, 90 F.3d at 623. The district court afforded GE Capital multiple opportunities to state a claim for successor liability. The court's order on March 16, 1994 even highlighted the specific problem in GE Capital's claim. In this situation, where the plaintiff has repeatedly failed to remedy the same deficiency, the district court did not abuse its discretion by dismissing the claim with prejudice.

For the above reasons, we AFFIRM the court's dismissal of GE Capital's successor liability claim, REVERSE its dismissal of GE Capital's fraudulent transfer claim, and REMAND for further proceedings consistent with this opinion.