139 F.3d 902
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
William J. VAJK, Plaintiff-Appellant,
v.
Charles TINDELL and Gary Del Re, Defendants-Appellees.
 No. 97-2030.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 9, 1998.*
Decided Feb. 9, 1998.
Rehearing and Suggestion for Rehearing En Banc Denied April 16, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 95 C 5796.
 Before Hon. WILLIAM J. BAUER, Hon. JOHN L. COFFEY, Hon. DANIEL A. MANION, Circuit Judges.
 
 ORDER
 
 1
 William J. Vajk sued Charles Tindell, Clinton Grinnell, and Marylou Karkow-Brown pursuant to 42 U.S.C. § 1983, seeking damages stemming from an allegedly improper arrest carried out by Tindell, a deputy sheriff for Lake County, Illinois, on October 7, 1993. Vajk claims that Tindell failed to investigate fully the circumstances surrounding a car accident between Vajk and Karkow-Brown ("Brown") and then arrested him without probable cause. The defendants filed a motion for summary judgment, which the district court granted. Vajk appeals this determination, as well as numerous other rulings made by the district court in the defendants' favor. We affirm.
 
 
 2
 On October 7, 1993, Brown and Vajk had a car accident. According to Brown, Vajk rammed his car into her car and attempted to run her off the road while she was dropping her car-pool children off at their homes. She claims that he demanded her purse, which she gave him, and that he then drove away. The mother of Daniel Renayer, one of the children riding in Brown's car at the time of the accident, called the police, and Officer Tindell was dispatched to Brown's home to take an accident report. Vajk was present at Brown's home at the time of Tindell's arrival, so Tindell was able to inspect the two cars at issue and to speak separately with both Vajk and Brown. He also spoke with Daniel Renayer, who substantiated Brown's story. Although Vajk maintained that the collision was a mistake and occurred because Brown was on a drinking binge and he simply wanted to stop her car so as to procure the alcohol he believed she was carrying in her purse, Officer Tindell gave greater credence to Brown's version of the story and arrested Vajk for the offenses of criminal damage to property, reckless driving, and leaving the scene of an accident. Vajk subsequently pleaded guilty to the charge of leaving the scene of a property damage accident, was fined, and was placed on six months' court supervision.
 
 
 3
 On October 10, 1995, Vajk sued Brown, Tindell, and Grinnell (the Sheriff of Lake County, Illinois), alleging that the defendants' actions on October 7, 1993 violated his civil rights. Specifically, Vajk claimed that Brown was liable for falsely inducing Officer Tindell to arrest him; that Tindell was liable for failing to investigate fully the facts surrounding the accident, and for arresting him without probable cause pursuant to a police policy that favors women's claims of violence as superior to men's; and that Grinnell was liable for promulgating the policy favoring women and for the actions of Tindell under the doctrine of respondeat superior. While he does not explicitly say so in his complaint, Vajk further alleged that Tindell violated his Fourth Amendment rights when he arrested him, without a warrant, within the confines of his home or its curtilage.
 
 
 4
 Vajk voluntarily dismissed Brown from the lawsuit before she filed an answer, and on November 18, 1996, the district court substituted Gary Del Re for Sheriff Grinnell after Grinnell resigned from office on October 8, 1996. The defendants then filed a motion for summary judgment, arguing that Vajk's civil rights had not been violated because Tindell had probable cause to arrest Vajk and because a warrant was not needed for an arrest in a public area. The district court agreed with the defendants and granted their motion.
 
 
 5
 Vajk first argues on appeal that the district court erroneously concluded that Officer Tindell had probable cause to arrest him. We review a district court's finding of probable cause de novo, although we accept the district court's finding of facts unless they are clearly erroneous United States v. Osborn, 120 F.3d 59, 62 (7th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 636, 139 L.Ed.2d 615, 1997 WL 697418 (1997), Jones v. Watson, 106 F.3d 774, 777 (7th Cir.1997). A police officer has probable cause to arrest "when 'the facts and circumstances within [his] knowledge and of which [he has] reasonably trustworthy information [are] sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense.' " Booker v. Ward, 94 F.3d 1052, 1057 (7th Cir.1996) (quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). Probable cause is evaluated based on facts not " 'as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer--seeing what he saw, hearing what he heard.' " Id. at 1057-58 (citations omitted), See also United States v. Valencia, 913 F.2d 378, 382 (7th Cir.1990) ("Probable cause involves a practical, common sense determination about whether, given all the circumstances present, it is reasonably probable that a person has committed or is committing an offense."). While the question of probable cause is typically one for the jury, a district court may conclude, as a matter of law, that probable cause existed "when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." Sheik-Abdi v. McClellan, 37 F.3d 1240, 1246 (7th Cir.1994).
 
 
 6
 The record establishes that probable cause existed for Vajk's arrest. When a police officer receives information from a third party, such as the putative victim or an eyewitness, whom the officer has reason to believe is telling the truth, the officer has probable cause. Grimm v. Churchill, 932 F.2d 674, 675 (7th Cir.1991); see also Gramenos v. Jewel Companies, Inc., 797 F.2d 432, 437 (7th Cir.1986) ("A policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of a crime."). In this case, Officer Tindell spoke separately with Brown, Vajk, and Renayer about the accident. Officer Tindell found Brown and Renayer to be credible witnesses and further found that their substantially similar versions of the accident comported with the damage to Brown's and Vajk's cars. Vajk also admitted to Officer Tindell that he struck Brown's car, although he claimed the collision to be accidental. Finally, Officer Tindell found the cars and their drivers at Brown's house--and not where the accident actually occurred. Based on this information, Officer Tindell had reason to conclude that, more probably than not, Vajk had knowingly damaged Brown's car, had driven recklessly in so doing, and had left the scene of the accident in violation of numerous sections of the Illinois Compiled Statutes.[1]
 
 
 7
 Vajk has offered no substantive evidence indicating that Officer Tindell acted imprudently or unreasonably in believing Brown and Renayer at the time of the arrest. While Vajk suggests that Officer Tindell ignored numerous "warning signals" demonstrating that Brown was an unreliable source of information, none of these alleged signals--even if true--was apparent to Officer Tindell at the time of the arrest and thus is irrelevant to a finding of probable cause. See Edwards v. Cabrera, 58 F.3d 290, 292 (7th Cir.1995). The fact that Brown changed her version of the facts regarding the accident during her 1996 deposition likewise has no bearing on probable cause because the central issue is what Officer Tindell knew at the time of the accident, not whether Brown actually told the truth. Gramenos, 797 F.2d at 439. As for Vajk's contention that Officer Tindell was a "rookie" who failed to carry out a thorough investigation prior to the arrest, we note that while good police practices may recommend complete investigations and interviews prior to an arrest, the Constitution does not require them. Grimm, 932 F.2d at 676, Gramenos, 797 F.2d at 440-42.
 
 
 8
 Vajk also contends the district court erred in concluding that his warrantless arrest comported with the requirements of the Fourteenth Amendment. This argument is without merit The record indicates that Officer Tindell was present on Brown's property with her consent and that he arrested Vajk while Vajk was standing either within Brown's open garage or outside on Brown's driveway. Either way, it is evident from pictures contained in the record depicting Brown's driveway and garage that Vajk was exposed to the public at the time of his arrest. A person does not have a legitimate privacy interest when he knowingly exposes himself to the public. Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); United States v. Evans, 27 F.3d 1219, 1228 (7th Cir.1994) (FBI agents' approach to the defendant's garage via the driveway did not implicate the Fourth Amendment). Moreover, Vajk has failed to come forward with evidence demonstrating how he had a reasonable expectation of privacy in either Brown's open garage or her driveway. See United States v. Mitchell, 64 F.3d 1105, 1110 (7th Cir.1995) (defendant failed to establish a privacy interest simply by alleging, without support, that he had permission to enter an apartment belonging to another and to exclude others from entering). We therefore find no error with the district court's conclusion that the arrest was valid.
 
 
 9
 Vajk argues vaguely, and without any legal support, that the district court erred in refusing to grant a host of motions he filed prior to the grant of summary judgment. The first such motion involved his request that judicial notice be taken of letters Brown wrote directly to the court--letters which Vajk claims demonstrate Brown's bias and ill-will against him. We review the district court's refusal to grant the motion for abuse of discretion. Waid v. Merrill Area Public Schools, 130 F.3d 1268, 1272 (7th Cir.1997). "A court may take judicial notice of an adjudicative fact that is both 'not subject to reasonable dispute' and either 1) 'generally known within the territorial jurisdiction of the trial court' or 2) 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.' " General Electric Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1081 (7th Cir.1997) (quoting Fed.R.Evid. 201(b)). Since judicial notice is an adjudicative device that allows a court to accept as true certain facts or propositions without the introduction of additional evidence, its usage merits caution and strict adherence to the criteria established by the Federal Rules of Evidence. Id. In this case, the district court refused to take judicial notice of Brown's letters, noting that it had never even read the letters, in accordance with its policy of disregarding correspondence sent directly to the court. Our review of the letters reveals that they are not the kind of information suitable for judicial notice. Not only are their contents subject to reasonable dispute, but their facts also neither reflect facts generally known within the territorial jurisdiction of the court nor information capable of determination by resort to sources whose accuracy cannot reasonably be questioned. Accordingly, the district court's refusal to grant the motion was not an abuse of discretion.
 
 
 10
 Another ruling Vajk contests is the district court's refusal to order an in camera inspection of Brown's mental health records. Again, we review this determination for an abuse of discretion, Silets v. U.S. Dept. of Justice, 945 F.2d 227, 229 (7th Cir.1991), and we find no abuse of discretion. The district court refused to grant Vajk's motion because there were no documents to review. The mental health facility in receipt of Vajk's subpoena refused to comply with his requests for her records on grounds that the Illinois Mental Health and Developmental Disabilities Confidentiality Act, 740 ILCS 110/1-17, and the Illinois Medical Patient Rights Act, 410 ILCS 50/0.01-99, prohibit disclosure absent Brown's consent or a court order. See 740 ILCS 110/10, 410 ILCS 50/3(d). The district court noted that Brown had not authorized a release of the information; in fact, Vajk had not even notified Brown of his wish to procure her medical records. The court therefore struck the motion. This ruling was not an abuse of discretion.
 
 
 11
 Vajk next appeals the district court's order quashing his subpoena to the Illinois Department of Children and Family Services ("DCFS") for records pertaining to Brown's children. Matters of discovery are left within the sound discretion of the district court, and we will not reverse absent an abuse of this discretion. Brill v. Lante Corp., 119 F.3d 1266, 1275 (7th Cir.1997). Here, the district court granted DCFS's motion to quash on grounds that the records are protected from disclosure by the Abused and Neglected Child Reporting Act, 325 ILCS 5/1-11.7. While courts may have access to child abuse records deemed necessary for the determination of an issue before the court, 325 ILCS 5/11.1(8), there is no indication that the resolution of issues raised in Vajk's civil rights suit hinged on information pertaining to Brown's children. Therefore, the district court committed no abuse of discretion in quashing Vajk's DCFS subpoena.
 
 
 12
 Vajk also appeals the district court's refusal to grant a number of other motions, including a motion to hold the defendants' counsel in contempt, a motion to strike an affidavit supplied by Brown on grounds that it lacked an address, a motion to impose a gag order on Brown, a motion seeking the recusal of Judge Manning, and a motion for a "stay of adjudication" so that a hearing could be held for purposes of "impeaching" Brown. As with his appeal of the three motions discussed above, Vajk fails to support his claims with proper legal argument, and we can find no grounds upon which to find the district court's determinations in error.
 
 
 13
 For the foregoing reasons, the judgments of the district court are AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 Illinois permits full custodial arrest, based on probable case, for any crime, including traffic offenses. 725 ILCS 5/107-2(1)(c); Gramenos, 797 F.2d at 441